# APPENDIX A - PLEA AGREEMENT

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                            )<br>           Plaintiff,       )<br>                            )<br>      v.                    )<br>                            )<br>JOHN S. LIPTON,             )<br>MARLYN D. HINDERS,          )<br>DAVID L. JOHNSON,           )<br>RICHARD B. LEONARD,         )<br>WILLIAM H. NURICK,          )<br>VICTOR H. PRESTON,          )<br>DENISE TAYLOR-FRASER,       )<br>WILLIAM TAYLOR-FRASER,      )<br>TERESA R. VOGT,             )<br>                            )<br>           Defendants.      )<br>_____) | No. CR 05-316-DSF<br><br>FACTUAL BASIS FOR GUILTY PLEA<br>OF RICHARD B. LEONARD |

## INTRODUCTION

At all times relevant to this indictment:

A. **THE ENTITIES INVOLVED**

    1.  The Internal Revenue Service ("IRS") was a constituent agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States, and collecting the taxes owed to the Treasury of the United States by its citizens.

    2.  Beginning in July 1994, the Genesis Fund was an unregulated offshore private investment fund that engaged in foreign currency ("forex") trading through an Asian foreign currency dealer.  The Genesis Fund began as an informal investment group in July 1994 that called itself "The Human Element."  In October 1995, the name was changed to the Genesis Fund ("the Genesis Fund").

    3.  International Bright Investment, Ltd., ("IBI") was an entity based in Hong Kong and Macau, both of which were Special

Administrative Regions of China in the South China Sea. Representatives of the Genesis Fund, including the defendants, represented that IBI was the foreign currency dealer for the Genesis Fund. The principal of IBI, M.L., was a Hong Kong national and used J.Y., a resident of the Central District of California, to act as an intermediary between it and the Genesis Fund.

4.   Currency Trading Management Group ("CTMG") was the name of an entity portrayed by defendants to investors as an offshore company in charge of trading decisions for the Genesis Fund, which trades purportedly were executed by IBI.

B.   THE INDIVIDUALS INVOLVED

5.   Defendant RICHARD B. LEONARD ("LEONARD") was an early investor, a promoter, and later a manager of the Genesis Fund. Defendant LEONARD resided in Littleton, Colorado, until he relocated to Costa Rica in June 2000.

6.   Co-conspirator Edward J. Lashlee ("Lashlee") owned and operated Professional Trust Services ("PTS"), which promoted and sold trusts as so-called "asset protection" vehicles to clients, including defendants RICHARD B. LEONARD, JOHN S. LIPTON, MARLYN D. HINDERS, DAVID L. JOHNSON, WILLIAM H. NURICK, VICTOR H. PRESTON, and TERESA R. VOGT (referred to collectively herein as "the defendants"). Lashlee created and maintained such trusts and related bank accounts for his clients in exchange for fees. Lashlee operated PTS primarily from his residence in San Juan Capistrano, California, using a mailing address at 219 Broadway, #400, Laguna Beach, California. Lashlee was also a manager and administrator of the Genesis Fund until September 1999.

7. Defendant JOHN S. LIPTON ("LIPTON") was a founding member and the principal manager of the Genesis Fund. Defendant LIPTON resided in Mission Viejo and Laguna Hills, California, until March 1998 when he relocated to Costa Rica.

8. Defendant MARLYN "MILT" D. HINDERS ("HINDERS") was a promoter and a manager of the Genesis Fund. From July 1994 until May 2004, defendant HINDERS resided in Aurora and Parker, Colorado, at which time he moved to Mexico.

9. Defendant DAVID L. JOHNSON ("JOHNSON") was an early investor, and a promoter and manager of the Genesis Fund. From July 1994 until the present, defendant JOHNSON has resided in West Covina and Covina, California.

10. Defendant WILLIAM H. NURICK ("NURICK") was a founding member of the Genesis Fund and a Genesis Fund manager. From July 1994 to 2001, defendant NURICK resided in Irvine and Shaver Lake, California. From 2001 until April 2003, defendant NURICK resided in Costa Rica. Thereafter, defendant NURICK has resided in Camarillo, California.

11. Defendant VICTOR H. PRESTON ("PRESTON") was a founding member and a manager of the Genesis Fund. From July 1994 to June 2000, defendant PRESTON resided in Huntington Beach and Laguna Hills, California. Defendant PRESTON relocated to Costa Rica in June 2000.

12. Defendant DENISE TAYLOR-FRASER was a Genesis Fund investor and a manager (in summer 2000). Defendant DENISE TAYLOR-FRASER is married to defendant WILLIAM TAYLOR-FRASER, and has resided with him in Riverside, California, since summer 2000.
//


13.   Defendant WILLIAM TAYLOR-FRASER was a Genesis Fund investor and became a manager in summer 2000.

14.   Defendant TERESA R. VOGT ("VOGT") was a primary administrator and later a manager of the Genesis Fund.  From July 1994 to present, defendant VOGT has resided in Anaheim, California.  From May 1995 to September 1999, defendant VOGT conducted the administrative operations of the Genesis Fund from her home in Anaheim, California.

15.   Co-conspirator Michael Putnam ("Putnam") was a founding member and promoter of the Genesis Fund until July 2002.

16.   A co-conspirator lawyer from Costa Rica (the "Costa Rican lawyer") provided offshore incorporation and private banking services to some managers, promoters, and investors of the Genesis Fund, including defendants LEONARD, LIPTON, HINDERS, JOHNSON, NURICK, and PRESTON, beginning in January 1999 until June 2002.  The Costa Rican lawyer also performed administrative services for the Genesis Fund from late 1999 through 2001.

C.   <u>NATURE OF THE CONSPIRACY TO DEFRAUD THE IRS AND TO EVADE THE ASSESSMENT AND PAYMENT OF INDIVIDUAL INCOME TAXES TO THE IRS</u>

17.   From July 1994 to May 2005, within the Central District of California and elsewhere, defendants, including defendant LEONARD, and Lashlee, the Costa Rican lawyer and others knowingly combined, conspired, confederated, and agreed to defraud the United States by deceitful and dishonest means for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the IRS in the ascertainment, computation, assessment, and collection of the revenue: namely, income taxes owed on income obtained by defendants from the Genesis Fund, including defendant LEONARD, and to willfully

4

attempt to evade the assessment and payment of individual income taxes of defendant LEONARD to the United States Treasury.

18. Specifically, co-conspirator Lashlee would open bank accounts for defendant LEONARD and others, including some Genesis Fund investors, in the names of trusts into which distributions from the Genesis Fund were deposited.

19. Aided and abetted by co-conspirator Lashlee, defendants and others used various bank accounts held in the names of trusts or other entities to deposit their Genesis Fund income. Specifically defendant LEONARD used an account at Paine Webber UBS in the name of Ortega Management Trust to deposit his Genesis Fund income.

20. In early 1999, the defendants, including defendant LIPTON, and others, agreed to create "disclosed" Genesis Fund accounts in order to report to the IRS some, but not all, Genesis Fund distributions. The "undisclosed" accounts had been established before 1999 and were not to be reported to the IRS.

21. In 1999, defendant LIPTON, acting for himself, defendant LEONARD and others, caused the Costa Rican lawyer to create Costa Rican corporations and related bank accounts and obtain credit cards supported by those accounts for the purpose of receiving Genesis Fund distributions. These Costa Rican corporations and related bank accounts were established for the purpose of receiving Genesis Fund income in order to evade reporting income to the IRS. The name of the corporation defendant LEONARD used for this purpose was Abetos Del Bosque Lluvioso S.A. at Banco Elca.

//

22. In addition, defendant LEONARD and others recommended to some Genesis Fund investors that they use the services of the same Costa Rican lawyer to create Costa Rican corporations and bank accounts in order to receive distributions from the Genesis Fund.

23. After March 2000, defendant LEONARD learned from LIPTON and the Costa Rican attorney that LIPTON and VOGT had transferred the records of Genesis Fund to Costa Rica.

24. The defendants, including defendant LEONARD, did not fully report their Genesis Fund income on their personal returns, and no tax returns were filed on behalf of the trusts.

25. Defendant LIPTON insisted upon the use of encrypted e-mail communications between the defendants regarding the Genesis Fund.

26. During the calendar years 1999 through 2002, defendant LEONARD received income substantially in excess of the minimum filing requirement amount set by the Internal Revenue Service which he did not report to the Internal Revenue Service, and upon which he owed significant individual income taxes for the years 1999 through 2002.

D.  OVERT/AFFIRMATIVE ACTS

27. In furtherance of the conspiracy and to accomplish its objects, and in an attempt to willfully evade the assessment and payment of individual income taxes to the Internal Revenue Service, defendant LEONARD and others committed the following overt and affirmative acts, among others, in the Central District of California and elsewhere, to wit:

//

6

1      a.  On January 28, 1999, defendant LEONARD caused
2  International Centrix check #5355 in the amount of $10,000 to be
3  deposited into Account #xx xxx40 51 in the name of Ortega
4  Management Trust at Paine Webber (now UBS Paine Webber).
5      b.  During September 1999, defendant LIPTON moved the
6  Genesis fund's bank accounts from California to Costa Rica,
7  hiring the co-conspirator Costa Rican attorney and his law firm
8  to handle Genesis fund investor funds.
9      c.  During 2000, defendant LEONARD utilized bank accounts in
10 the name of Abetos Del Bosque Lluvioso S.A., specifically the use
11 of credit cards issued on the accounts.
12     d.  I acknowledge that additional overt acts in furtherance
13 of the conspiracy were undertaken by my co-conspirators from July
14 1994 through March 2005, and specifically between March 30, 2000
15 and March 30, 2005.  I further acknowledge that additional
16 affirmative acts of evasion were undertaken by myself from July
17 1994 through March 2005, and specifically between March 30, 2000
18 and March 30, 2005.
19     I have read Appendix A to the Plea Agreement and carefully
20 discussed every part of this Appendix to the Plea Agreement with
21 my attorney.  I agree to the facts as stated above.

    _/s/ Richard B. Leonard_                  _11/26/08_
RICHARD B. LEONARD                   Date
Defendant

25 //
26 //
27 //
28 //

7

1  I am RICHARD B. LEONARD's attorney.  I have read Appendix A
2  to the Plea Agreement and carefully discussed every part of this
3  Appendix to the Plea agreement with my client.  To my knowledge,
4  my client's decision to agree to the facts as stated above is an
5  informed and voluntary one.

_____        11-26-08
STEPHEN G. FRYE                         Date
Counsel for Defendant
RICHARD B. LEONARD