THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
RANEE A. KATZENSTEIN (CSB No. 187111)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-2432
     E-mail: Ranee.Katzenstein@usdoj.gov
LORI A. HENDRICKSON
Trial Attorney (Ohio BN: 0067831)
ELLEN M. QUATTRUCCI
Trial Attorney (D.C. BN: 462103)
DANNY N. ROETZEL
Trial Attorney (Missouri BN: 34879)
Tax Division, Western
Criminal Enforcement Section
     P.O. Box 972
     Washington, D.C. 20044
     Telephone: (202) 514-5762
     Facsimile: (202) 514-9623
     E-mails:  Lori.A.Hendrickson@usdoj.gov
               Ellen.M.Quattrucci@usdoj.gov
               Danny.N.Roetzel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 05-316-DSF |
| Plaintiff, | **GOVERNMENT'S MEMORANDUM REGARDING RESTITUTION FROM DEFENDANT RICHARD B. LEONARD [EXHIBITS PREVIOUSLY FILED UNDER SEAL]** |
| v. | |
| JOHN S. LIPTON, et al., | RESTITUTION HEARING: |
| Defendants. | Date:     July 27, 2009<br>Time:     8:30 a.m. |

4402674.2

Plaintiff, United States of America, by and through its counsel of record, Assistant United States Attorney Ranee A. Katzenstein and Trial Attorneys Lori A. Hendrickson, Ellen M. Quattrucci, and Danny N. Roetzel, Department of Justice, Tax Division, hereby files its Position Re: Restitution.

The government's Position re: Restitution by Defendant is based on the attached memorandum of points and authorities; the record and file in this case; and any additional evidence and argument that the Court receives prior to or at the hearing on defendant LEONARD's restitution.

Dated: July 15, 2009          Respectfully Submitted,

```
                              THOMAS P. O'BRIEN
                              United States Attorney

                              CHRISTINE C. EWELL
                              Assistant United States Attorney
                              Chief, Criminal Division

                              RANEE A. KATZENSTEIN
                              Assistant United States Attorney
                              Major Frauds Section



                              /s/Ellen Quattrucci
                              LORI A. HENDRICKSON
                              ELLEN M. QUATTRUCCI
                              DANNY N. ROETZEL
                              Trial Attorneys
                              Tax Division

                              Attorneys for Plaintiff
                              United States of America
```

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

The government recommends that defendant RICHARD B. LEONARD ("defendant" or "LEONARD") be ordered to pay restitution in the amount of $3,000,000.00. The total tax loss and interest due to the Internal Review Service as a result of the conspiracy to which LEONARD pleaded guilty exceeds $3.5 million. However, the government in the plea agreement set the $3,000,000 figure as its estimate of the restitution in this matter, and the government declines to seek the Court to order more than that amount as part of defendant's sentence.

**II**

**FACTS**

**A.   Offense Conduct**

From July 1994 to May 2005, defendants, including defendant LEONARD, and co-conspirators Edward J. Lashlee ("Lashlee"), a Costa Rican lawyer and others conspired to defraud the United States, specifically the Internal Revenues Service, Department of the Treasury of the revenue: namely, the individual income taxes owed by defendants on income they received from the Genesis Fund, including the income received by defendant LEONARD. (See Exhibit 1, Tax Loss Summary for Defendants and Conspirators.[1]) Defendant

---

[1] The exhibits referred to in this Memorandum have been filed previously under seal with the Court. They are listed at Docket Entry No. 730 and titled "Government's Exhibits in Support of Government's (a) Concurrence in PSR's Finding and (b) Position Re: Sentencing of Defendant Richard B. Leonard."

LEONARD further willfully attempted to evade the assessment and payment of his individual income taxes due to the United States Treasury.[2] (See Exhibit 2, Individual Income Tax Calculations for Richard B. Leonard.)

Specifically, co-conspirator Lashlee opened bank accounts for defendant LEONARD and others, including some Genesis Fund investors, in the names of trusts into which distributions from the Genesis Fund were then deposited. (See, e.g., Exhibit 3, Nominee Entities Utilized by Richard B. Leonard.) Aided and abetted by Lashlee, defendants and others used various bank accounts held in the names of trusts or other entities to deposit their Genesis Fund income. Specifically defendant LEONARD used an account at Paine Webber UBS in the name of Ortega Management Trust to deposit his Genesis Fund income.

In early 1999, the defendants, including defendant LIPTON, and others, agreed to create "disclosed" Genesis Fund accounts in order to report to the Internal Revenue Service some, but not all, of their Genesis Fund distributions. The "undisclosed" accounts had been established before 1999 and were not to be reported to the Internal Revenue Service. Also in 1999, defendant LIPTON, defendant LEONARD and others, caused the Costa Rican lawyer to create Costa Rican corporations and related bank accounts and obtain credit cards supported by those accounts for the purpose of receiving Genesis Fund distributions. These Costa

---

[2] The government has set forth the additional charged conduct in Exhibit 11, Narrative Summary of Case. Defendant has admitted to the facts in this section although not the exhibits. See Factual Basis to Plea Agreement.

Rican corporations and related bank accounts were established for the purpose of receiving Genesis Fund income in order to evade reporting income to the IRS. The name of the corporation defendant LEONARD used for this purpose was Abetos Del Bosque Lluvioso S.A. at Banco Elca. Additionally, defendant LEONARD and others recommended to some Genesis Fund investors that they use the services of the same Costa Rican lawyer to create Costa Rican corporations and bank accounts in order to receive distributions from the Genesis Fund. One example of defendant's evasion was that on January 28, 1999, LEONARD caused International Centrix check #5355 in the amount of $10,000 to be deposited into Account #xx xxx4051 in the name of Ortega Management Trust at Paine Webber (now UBS Paine Webber). Another illustration of his conduct is that during 2000, LEONARD utilized bank accounts in the name of Abetos Del Bosque Lluvioso S.A., specifically the use of credit cards issued on the accounts, in order to evade income taxes.

  The defendants, including defendant LEONARD, did not fully report their Genesis Fund income on their personal income tax returns, and no tax returns were filed on behalf of the trusts. During the calendar years 1999 through 2002, defendant LEONARD received income substantially in excess of the minimum filing requirement amount set by the Internal Revenue Service which he did not report to the Internal Revenue Service, and upon which he owed significant individual income taxes for the years 1999 through 2002. (See Exhibits 1 through 10, Tax Loss Summary and Individual Income Tax Calculations for each defendant.)

**B.      Proceedings**

Defendants were indicted on March 30, 2005, in an 83-count indictment charging violations of the conspiracy, wire and mail fraud, tax fraud, money laundering, obstruction and forfeiture statutes.  Shortly thereafter, defendants DAVID L. JOHNSON ("JOHNSON"), WILLIAM H. NURICK ("NURICK"), DENISE TAYLOR-FRASER ("D. TAYLOR-FRASER, WILLIAM TAYLOR-FRASER ("W. TAYLOR-FRASER") and TERESA R. VOGT ("VOGT") were arrested pursuant to arrest warrants in the Central District of California and subsequently released on bond.

Defendants JOHN S. LIPTON ("LIPTON"), RICHARD B. LEONARD ("LEONARD") and VICTOR H. PRESTON ("PRESTON") were arrested in May 2005 and detained pursuant to provisional arrest warrants in Costa Rica, and ultimately extradited to the Central District of California in mid-June 2007.  This Court detained defendants LIPTON, LEONARD and PRESTON, pursuant to the standards set forth in the Bail Reform Act, 18 U.S.C. § 3142 et seq.  Defendants LIPTON and PRESTON remain detained.

Pursuant to various stipulations by defendants and the government, the Court initially set a trial date of January 15, 2008, and subsequently continued to April 1, 2009.  On September 19, 2008, Defendant NURICK filed a motion to continue the trial date of April 1, 2009.  Additionally, on October 20, 2009, the government filed a motion requesting the Court to sever counts 68 through 80 for all defendants, and to permit the parties to proceed to trial on these counts on the then-trial date of April 1, 2009.  The Court granted both the motion to continue and the

4402674.2

government's motion to sever.  On March 11, 2009, the Court set a new trial date of October 21, 2009 for counts 68 through 80, and a subsequent trial date of March 17, 2009 for counts 1 through 67 and 81 through 83.

On December 1, 2008, defendant LEONARD pleaded guilty to Conspiracy to Defraud an Agency of the United States, in violation of 18 U.S.C. § 371; and attempted tax evasion for the calendar year 2000, in violation of 26 U.S.C. § 7201. (PSR ¶¶ 3-5).  In the plea agreement, LEONARD agreed, inter alia, to make full restitution for the losses caused by his activities.  The government also noted in the plea agreement that it believed the applicable amount of restitution was $3,000,000, but recognized and agreed that this amount could change based on facts that came to the attention of the parties prior to sentencing.

On January 30, 2009, the Probation Office disclosed the PSR. In the PSR, the Probation Officer found that LEONARD's total advisory guidelines offense level is 23, resulting in an advisory sentencing guidelines range of 46-57 months.  After considering all of the factors listed in 18 U.S.C. § 3553(a), the Probation Officer recommended a sentence at the low end of the advisory range, i.e., 46 months. (Rec. Let. at 3).

On February 11, 2009, the government filed with the Court a Sentencing Memorandum.  With respect to incarceration, the government argued in its Sentencing Memorandum that considering all of the § 3553(a) factors, and specifically LEONARD's health and the fact that he had already served a significant term of incarceration, a "time served" custodial sentence was warranted.

4402674.2

The government also argued that LEONARD should be ordered to make complete restitution for the criminal conspiracy to which he pleaded guilty, and that the applicable amount of restitution, supported by exhibits filed under seal, was $3 million.

The Court sentenced LEONARD on February 23, 2009 to "time served," to be followed by three years supervised release. The Court deferred determination of any restitution to be paid by LEONARD pursuant to 18 U.S.C. § 3664(d)(5). The Court subsequently scheduled a Restitution Hearing for July 27, 2009.[3]

---

[3] The issue of the amount of restitution to be ordered was continued for 90 days in order to allow defendant LEONARD the opportunity to discuss the loss calculation with the IRS. The parties agreed to continue the hearing further, until July 27, 2009, in order to allow defendant LEONARD time to procure documents from Costa Rica that he believed would affect the calculation of the amount of loss.

Defendant's retained investigator, Mr. Ristuccia, spoke at length with Special Agent Molly Molt and Revenue Agent Jean Pruh regarding the IRS's calculation of the amount of loss caused by defendant LEONARD's conduct. After the first conversation, Mr. Ristuccia indicated that he would like to speak with the IRS again after he received the documents he had requested from Costa Rica.

Shortly thereafter, counsel for defendant advised the government that defendant LEONARD was unable to obtain the requested documents. Given that the IRS had not heard anything further from Mr. Ristuccia, on July 8, 2009, government counsel contacted Mr. Frye to advise him that Ms. Molt was available for further inquiries and to determine if Mr. Frye wanted to discuss any additional issues with the IRS. A second telephone conference was held between the IRS and Mr. Ristuccia wherein several issues as the accuracy of the tax calculation was discussed. None of the issues raised by defendant LEONARD materially affect the amount of restitution sought by the government. Specifically, the government is seeking $3 million in restitution based upon the plea agreement – not the $3.5 million in actual loss. The issues raised by defendant LEONARD would not significantly change the tax loss calculated by the IRS to fall below the $3 million sought in restitution. Until the

# III

## ARGUMENT

**A. Defendant Should Be Ordered to Make Complete Restitution for the Criminal Conspiracy to Which He Pleaded Guilty**

### 1. The Total Loss to the Internal Revenue Service Is at Least $3 Million

The plea agreement allowed the parties to argue to the Court the amount of restitution to be imposed in this matter. Paragraph 9 of the plea agreement states in full:

> *Defendant agrees to make full restitution for the losses caused by defendant's activities. The Offices currently believe that the applicable amount of restitution is $3,000,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. Defendant further agrees that defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.*

The government believes that the applicable amount of restitution is $3 million, as supported by the exhibits submitted separately under seal. (See Exhibits 1 through 10.) Conservatively, as set forth in the government's exhibits, the Genesis Funds that were distributed to the defendants were $12,637,718.88. (Exhibit 12, Interest Calculations on Tax Loss for All Defendants.)  This amount does not include distributions

---

eve of this filing, on July 14, 2009, defendant LEONARD never raised the issue of the accuracy of the tax computations of the co-defendants.  Mr. Ristuccia did not ask for further information regarding the co-defendant calculations (the calculations were provided to defendant in February 2009) or discuss it with the IRS. Moreover, the information necessary to make these calculations has all been provided in discovery and defendant LEONARD has had access to these materials for over two years.

to Genesis clients, with the exception of distributions to George Boeck.[4] To be conservative, the government has subtracted the alleged capital contributions of all defendants except LIPTON.[5] At a conservative capital gains tax rate of 25%, the amount of tax loss would be $2,039,365.00, not including interest.[6] (See Exhibits 1 through 10.) With interest, the total loss rises to $3.5 million. (Exhibit 12.) This amount includes $417,277, the amount of federal income taxes that defendant Leonard evaded on his $1,920,940.45 in Genesis Fund income. (Exhibit 2.) The government in the plea agreement set the $3,000,000 figure as its estimate of the restitution in this matter. The government declines to seek the Court to order more than that amount of restitution as part of defendant's sentence.

### 2. **Defendant Is Liable for All Actual Losses Caused By the Tax Fraud Conspiracy**

In determining the appropriate amount of restitution, this Court must determine the actual losses caused by defendant's

---

[4] Boeck was also a principal of the Genesis Fund.

[5] Defendant LIPTON's purported capital contributions are not deducted because there is no evidence to support the $2.8 million he claims to have contributed. (Exhibit 4, Individual Income Tax Calculations for John S. Lipton.)

[6] Some co-conspirators did not file tax returns, while others omitted their Genesis Fund income from returns filed with the IRS. Still others reported some, but not all Genesis Fund income. Finally, some of those who reported Genesis Fund income reported it as ordinary income while others reported the monies as capital gains. The government has calculated all co-conspirator taxes at the capital gains rate. The capital gains rate is lower than the applicable marginal individual income tax rates, thus crediting defendants an additional benefit.

fraudulent conduct -- that is, to compare 'what actually happened with what would have happened if [he] had acted lawfully.'" United States v. Bussell, 414 F.3d 1048, 1061 (9th Cir. 2005). Under this analysis, because defendant was convicted of a conspiracy to defraud an agency of the United States, the Internal Revenue Service, the actual loss for restitution purposes is not restricted to the loss resulting from conduct underlying particular substantive counts of conviction, e.g., defendant's individual income tax evasion. Rather, as the United States Court of Appeals for the Ninth Circuit has repeatedly emphasized in construing the statutes governing restitution, the correct measure of loss encompasses "the amount of damages caused by an entire scheme that is in the nature of a conspiracy rather than only in the amount caused by a particular act," including victims' losses arising through "the duration of the entire fraudulent scheme." United States v. Kubick, 205 F.3d 1117, 1128-29 (9th Cir. 1999) (construing the scope of restitution where defendant was convicted of conspiracy to commit bankruptcy fraud; accord United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004); United States v. Grice, 319 F.3d 1174, 1177-78 (9th Cir. 2003); United States v. Reed, 80 F.3d 1419, 1423 (9th Cir. 1996) (observing that 1990 amendment to Victim Witness Protection Act ("VWPA") provides that courts can order restitution for damage resulting from any conduct that is part of the conspiracy).

The government's burden in establishing the proper amount of loss for restitution purposes is preponderance of the evidence.

18 U.S.C. § 3664(e); United States v. Follet, 269 F.3d 996, 2002 (9th Cir. 2001). Where the precise amount of restitution is difficult to determine, the court is authorized to reach an expeditious, reasonable determination of restitution by resolving uncertainties with the aim of achieving fairness to the victim(s). United States v. Gordon, 393 F.3d 1044, 1054-55 (9th Cir. 2004). In determining the restitution amount, the court should focus on the remedial purpose of restitution, which is "'to restore the defrauded party to the position [it] would have had absent the fraud.'" Id. at 1053 (citation omitted) (emphasis in original).

Additionally, restitution exceeding the loss of the count of conviction, however, may be ordered when the defendant agrees to such in the plea agreement. United States v. Lorenzini, 71 F.3d 1489, 1495 n. 8 (9th Cir. 1995). In this case, the defendant agreed, pursuant to his plea agreement, to pay "full restitution for the losses caused by defendant's activities." (Plea Agreement at ¶ 9.) LEONARD's activities included the conspiracy to defraud the IRS in addition to his willful attempt to evade his own income taxes. See United States v. Lawrence, 189 F.3d 838, 846 (9th Cir. 1999) (when count of conviction "includes a scheme, conspiracy, or pattern of criminal conduct as an element of the offense," restitution order may include acts of related conduct for which the defendant was not convicted). The loss amount attributable to the conspiracy to defraud an agency of the United States exceeds $3 million. (See Exhibits 1 through 10, 12) Accordingly, the restitution order should include the entire

4402674.2

loss to the Internal Revenue Service, which the government has agreed to limit to $3,000,000.

### 3. The Court Should Reject Any Argument That LEONARD's Distributions Were Not His Personal Income

The government anticipates that LEONARD may contend at the restitution hearing that the distributions he received should be considered corporate income and not his personal income. In LEONARD's sentencing memorandum, filed previously with the Court, he asserted that his "shares in the Genesis Fund were owned by a corporation called Abetos del Lluvioso" and that "the assets of this corporation are now worthless." (LEONARD Sentencing Mem. at 7.) Any argument by LEONARD that the distributions he received were corporate income and not his personal income should be rejected by the Court.

In his guilty plea agreement, LEONARD agreed and stipulated to the statement of facts set forth in the Factual Basis for Guilty Plea of Richard B. Leonard. Defendant LEONARD admitted that his Costa Rican company was a created for the purpose of evading taxes:

> *Aided and abetted by co-conspirator Lashlee, defendants and others used various bank accounts held in the names of trusts and other entities to deposit their Genesis Fund income. Specifically defendant LEONARD used an account at Paine Webber UBS in the name of Ortega Management Trust to deposit his Genesis Fund income.*
>
> *. . .*
>
> *In 1999, defendant LIPTON, acting for himself, defendant LEONARD and others, caused the Costa Rican lawyer to create Costa Rican corporations and related bank accounts and obtain credit cards supported by those accounts for the purpose of receiving Genesis Fund distributions. These Costa Rican corporations and related bank accounts were established for the purpose*

> *of receiving Genesis Fund income in order to evade reporting income to the IRS.  The name of the corporation defendant LEONARD used for this purpose was Abetos Del Bosque Lluvioso S.A. at Banco Elba.*

(Plea Agreement Factual Basis at ¶¶ 19, 21.) Given that LEONARD has previously admitted that the Abetos Del Bosque Lluvioso corporation was a nominee entity created to receive his Genesis Fund distributions, he should not be permitted to argue now that the distributions sent to this corporation were not his personal income and should not be included in the tax loss calculations. Consequently, the total loss to the IRS as a result of the charges to which LEONARD pleaded guilty should include the total tax and interest due resulting from the Genesis Fund distributions received by LEONARD. (See Exhibit 12.)

### 4. LEONARD's Ability to Pay Should Not Be Considered in Determining the Restitution Amount

The government also anticipates that LEONARD may ask the Court to consider his ability to pay in determining the restitution amount.  In his previously filed sentencing memorandum, LEONARD agreed that a restitution hearing should be scheduled and stated that at such a hearing "the Court can assess Mr. Leonard's ability to pay whatever restitution is ordered." (LEONARD Sentencing Mem. at 8.)  The Court should not consider LEONARD's ability to pay in determining the restitution amount.

As noted by the Ninth Circuit, Congress passed the Mandatory Victim Restitution Act of 1996 ("MVRA") as a supplement to the Victim and Witness Protection Act of 1982 ("VWPA"). 18 U.S.C. § 3663. See Grice, 319 F.3d at 1177.  Restitution under the VWPA is discretionary, and the district court must consider a defendant's

resources when deciding if restitution is appropriate. 18 U.S.C. § 3663(a)(1)(A), (B). The MVRA, however, eliminates district courts' discretion with respect to restitution for certain classes of crimes. 18 U.S.C. § 3663A(a)(1). If the MVRA applies, a restitution order is mandatory regardless of the defendant's ability to pay. Id.; see also Grice, 319 F.3d at 1177. The offenses to which the MVRA applies include offenses against property under Title 18, including any offense committed by fraud or deceit. 18 U.S.C. § 3663A(c)(1)(A)(ii); see also Kubick, 205 F.3d at 1128-29 (ordering mandatory restitution on convictions for conspiracy to commit bankruptcy fraud and conspiracy to impede and impair the IRS, each in violation of 18 U.S.C. § 371).

LEONARD pleaded guilty, in part, to conspiracy to defraud and agency of the United States, in violation of 18 U.S.C. § 371. Moreover, defendant LEONARD specifically agreed to pay restitution for the amount of loss caused by his conduct. Plea Agreement ¶9. Accordingly, the MVRA applies to this case, restitution is mandatory, and the Court should not consider LEONARD's ability to pay in determining the restitution amount.

///
///

4402674.2

**IV**

**CONCLUSION**

For all the foregoing reasons, the government respectfully requests the Court to order LEONARD to make restitution to the Internal Revenue Service in the amount of $3,000,000 for the Criminal Conspiracy to which he pleaded guilty.

Date: July 15, 2009                    Respectfully Submitted,


                                       THOMAS P. O'BRIEN
                                       United States Attorney

                                       CHRISTINE C. EWELL
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                       RANEE A. KATZENSTEIN
                                       Assistant United States Attorney
                                       Major Frauds Section



                                          /s/Ellen Quattrucci
                                       LORI A. HENDRICKSON
                                       ELLEN M. QUATTRUCCI
                                       DANNY N. ROETZEL
                                       Trial Attorneys
                                       Tax Division

                                       Attorneys for Plaintiff
                                       United States of America