LAW OFFICE OF STEPHEN G. FRYE
Stephen G. Frye (CSBN 196728)
316 West Second St., Suite 1202
Los Angeles, California 90012
Telephone: (213) 621-1600
Facsimile: (213) 621-1644
Email:  sgf@sgfryelaw.com

Attorney for RICHARD LEONARD

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| United States of America, | ) CR 05-316-DSF |
|---|---|
| Plaintiff. | ) **RESPONSE OF DEFENDANT RICHARD LEONARD TO GOVERNMENT'S MEMORANDUM REGARDING RESTITUTION FROM RICHARD LEONARD** |
| vs. | |
| RICHARD LEONARD | |
| Defendant. | |
| | ) Date: July 27, 2009 |
| | ) Time: 8:30 a.m. |
| | ) Place: Hon. Dale S. Fischer |
| | )        Courtroom 840 |
| | )        U.S. District Court |
| | )        255 East Temple Street |
| | )        Los Angeles, CA 90012 |

**RESPONSE**

In its Memorandum Regarding Restitution from Richard B. Leonard (the "Restitution Memorandum"), the government claims that it has met its burden of proof regarding restitution.  Mr. Leonard cannot defend himself against the government's position, primarily because of actions taken by the government.  Mr. Leonard may never be able to defend himself against the government's claims.  Mr. Leonard respectfully urges the Court to

decline to order restitution in this case because accurately determining tax loss involves complex issues of fact that would complicate or prolong sentencing to such a degree that the need to provide restitution to the government is outweighed by the burden on the sentencing process.  At most the Court should impose a restitution order based only the $10,000 deposited into the account of Ortega Management Trust and on the purchases using credit cards supported by the Abetos Del Bosque Lluvioso S.A. accounts (the "Abetos accounts").

**A.   The Court Should not Accept the Government's Calculations Regarding Restitution for Amounts Allegedly Owed by Co-Conspirators Because Mr. Leonard Cannot Defend Himself Against the Government's Calculations.**

The government indicted the alleged co-conspirators whose alleged tax liabilities the government seeks to collect from Mr. Leonard in restitution.  Those alleged co-conspirators are each represented by very capable counsel, who will not allow Mr. Leonard to speak with their clients regarding their clients' alleged tax liabilities.  Even after the case against these taxpayers is resolved, it is highly unlikely that counsel would permit their clients to discuss tax liabilities with Mr. Leonard. Thus, Mr. Leonard has no way, and likely will never have a way, to defend against the government's calculations regarding these taxpayers.

Moreover, disclosure laws restrict what the government can disclose to Mr. Leonard about its own calculations regarding the taxes of the alleged co-conspirators.  Whether by his inability to meet with the taxpayers whose taxes the government seeks to

1  collect from Mr. Leonard, or through the IRS's own disclosure
2  restrictions, Mr. Leonard cannot defend himself against the
3  government's position.  The Court should not order restitution
4  against anyone without a meaningful opportunity to address the
5  government's claims.
6      Further, none of the cases cited by the government for the
7  proposition that it can collect in restitution taxes allegedly
8  owed by co-conspirators involved tax fraud conspiracies.  Those
9  cases involve wire fraud, mail fraud and forgery, United States
10 v. DeGeorge, 380 F.3d 1203 (9th Cir. 2004); mail fraud and
11 forgery, United States v. Grice, 319 F.3d 1174 (9th Cir. 2003);
12 wire fraud and insider trading, United States v. Follett, 269
13 F.3d 996 (9th Cir. 2001); conspiracy to commit bankruptcy fraud,
14 United States v. Kubick, 205 F.3d 1117 (9th Cir. 1999); bankruptcy
15 fraud, United States v. Lawrence, 189 F.3d 838 (9th Cir. 1999);
16 bank fraud, United States v. Lorenzini, 71 F.3d 1489 (9th Cir.
17 1995); even felon in possession, United States v. Reed, 80 F.3d
18 1419 (9th Cir. 1996).  In these cases the defendants presumably
19 had access to sufficient information to defend themselves against
20 the government's claims.  Thus, while the Court generally can
21 impose restitution based on the conduct of co-conspirators in
22 typical cases involving fraud by multiple conspirators, it should
23 not do so in tax fraud conspiracies where the defendant has no
24 opportunity to contest the government's calculations vis-a-vis
25 the taxes owed by co-conspirators.

**B.  The Court Should not Accept the Government's Calculations Regarding Mr. Leonard's Tax Liability Because Mr. Leonard Has Been Denied Access to Documents Relevant to Defending Against the Government's Claims.**

In its Restitution Memorandum, the government seeks imposition of restitution based on tax amounts allegedly owed by Mr. Leonard. In his plea agreement, Mr. Leonard admitted that defendant Lipton caused Arnoldo Tinoco Andre "to create Costa Rican corporations and related bank accounts and obtain credit cards supported by those accounts for the purpose of receiving Genesis Fund distributions. These Costa Rican corporations and related bank accounts were established for the purpose of receiving Genesis Fund income in order to evade reporting income to the IRS. The name of the corporation defendant Leonard used for this purpose was Abetos Del Bosque Lluvioso S.A. at Banco Elba." (Factual Basis to Leonard Plea Agreement at ¶ 21). The government claims that, by agreeing to this language, Mr. Leonard conceded that ALL funds from the Genesis Fund deposited into the Abetos accounts constituted unreported income to Mr. Leonard. The language, however, does not extend so far as the government asserts.

Mr. Leonard concedes that he and his wife used credit cards supported by the Abestos account to purchase various items for their use. Mr. and Mrs. Leonard controlled these cards and the items purchased with the cards inured to their exclusive benefit. This income should have been reported to the IRS and Mr. Leonard owes back taxes on these amounts, which Mr. Leonard will provide to the Court at the restitution hearing.

Mr. Leonard, however, does NOT concede that ALL funds from the Genesis Fund deposited into the Abetos accounts constituted unreported income to Mr. Leonard.  The Abetos funds controlled by the Panamanian foundation did not inure to the exclusive benefit of Mr. and Mrs. Leonard.  As foundation counsel, Mr. Tinoco controlled these funds.  The Indictment in this case names Mr. Tinoco as an unindicted co-conspirator.  The government has also named Mr. Tinoco as a likely witness against the remaining co-defendants.  Mr. Tinoco has frozen all assets held in the name of the foundation.  The foundation has sued Mr. Tinoco in Costa Rica,[1] and that lawsuit remains unresolved.  Unsurprisingly, Mr. Tinoco refuses to meet with Mr. Leonard's defense team in this case or to provide access to the foundation records, at least on terms remotely acceptable to Mr. Leonard.

Without this access and without these documents, Mr. Leonard cannot defend himself against government assertions that ALL funds deposited into the Abetos accounts constitute taxable income to Mr. Leonard.  Without meaningful opportunity to defend himself, the Court should not order Mr. Leonard to pay restitution on ALL amounts deposited into the Abetos accounts.

In paragraph 19 of the factual basis to the plea agreement, Mr. Leonard admitted that, aided and abetted by co-conspirator Jay Lashlee, Mr. Leonard "used an account at Paine Weber UBS in the name of Ortega Management Trust to deposit Genesis Fund income."  In the government's calculation of Mr. Leonard's 1999 taxes, the government included $10,000 deposited from the Genesis

---

[1] The initial Supplemental Sentencing Memorandum Regarding Restitution filed on behalf of Mr. Leonard asserted that Mr. Leonard or the Leonard family had sued Mr. Tinoco. This is incorrect. The Panamanian Foundation has sued Mr. Tinoco.  Neither Mr. Leonard nor the Leonard family has sued Mr. Tinoco.

-5-

Fund to Ortega Management Trust as taxable income to Mr. Leonard. (See Exhibit B to Sentencing Position Memorandum of Defendant Richard Leonard Regarding Restitution Filed Under Seal).  Mr. Leonard concedes that he owes taxes on this amount.  At the 25% Capital Gains Tax Rate, Mr. Leonard owes $2,500, plus penalties and interest.

## CONCLUSION

Mr. Leonard respectfully urges the Court to decline to order restitution in this case because accurately determining tax loss involves complex issues of fact that would complicate or prolong sentencing to such a degree that the need to provide restitution to the government is outweighed by the burden on the sentencing process.  At most the Court should impose a restitution order based only the $10,000 deposited into the account of Ortega Management Trust and on the purchases made on credit cards supported by the Abetos accounts.

Dated:  July 22, 2009          Respectfully submitted,
                               LAW OFFICE OF STEPHEN G. FRYE


                               By:_____/s/_____
                                   Stephen G. Frye
                               Attorney for RICHARD LEONARD