1   GEORGE S. CARDONA
    Acting United States Attorney
2   CHRISTINE C. EWELL
    Assistant United States Attorney
3   Chief, Criminal Division
    LORI A. HENDRICKSON
4   Trial Attorney (Ohio BN: 0067831)
    ELLEN M. QUATTRUCCI
5   Trial Attorney (D.C. BN: 462103)
    DANNY N. ROETZEL
6   Trial Attorney (Missouri BN: 34879)
    Tax Division, Western
7   Criminal Enforcement Section
         P.O. Box 972
8        Washington, D.C. 20044
         Telephone: (202) 514-9370
9        Facsimile: (202) 514-9623
         E-mails:  Lori.A.Hendrickson@usdoj.gov
10                 Ellen.M.Quattrucci@usdoj.gov
                   Danny.N.Roetzel@usdoj.gov
11
    Attorneys for Plaintiff
12  UNITED STATES OF AMERICA

13                  UNITED STATES DISTRICT COURT

14             FOR THE CENTRAL DISTRICT OF CALIFORNIA

15                         WESTERN DIVISION
    UNITED STATES OF AMERICA,   )  NO. CR 05-316-DSF
16                              )
              Plaintiff,        )  **GOVERNMENT'S POSITION REGARDING**
17                              )  **RESTITUTION OF DEFENDANT RICHARD B.**
              v.                )  **LEONARD**
18                              )
    JOHN S. LIPTON, et al.,     )  RESTITUTION HEARING:
19                              )
              Defendants.       )  Date:    December 7, 2009
20                              )  Time:    8:30 a.m.
                                )
21                              )
                                )
22  _____ )

23        Plaintiff, United States of America, by and through its

24   counsel of record, Trial Attorneys Lori A. Hendrickson, Ellen M.

25   Quattrucci, and Danny N. Roetzel, Department of Justice, Tax

26   Division, hereby files its Position Re: Restitution.

27        The government's position is based on the attached

28
                                                          4402674.2

1  memorandum of points and authorities; the record and file in this

2  case; and any additional evidence and argument that the Court

3  receives prior to or at the hearing on defendant LEONARD's

4  restitution.   The government has filed its Exhibits in support of

5  its restitution calculation under separate cover concurrently

6  herewith.

7

8  Dated: November 23, 2009      Respectfully Submitted,

9

10                               GEORGE S. CARDONA
                                 Acting United States Attorney
11
                                 CHRISTINE C. EWELL
12                               Assistant United States Attorney
                                 Chief, Criminal Division
13

14

15                               /s/Ellen Quattrucci
                                 LORI A. HENDRICKSON
16                               ELLEN M. QUATTRUCCI
                                 DANNY N. ROETZEL
17                               Trial Attorneys
                                 Tax Division
18
                                 Attorneys for Plaintiff
19                               United States of America

20

21

22

23

24

25

26

27

28

2                                                    4402674.2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

The government recommends that defendant RICHARD B. LEONARD ("defendant LEONARD") be ordered to pay restitution in the amount of $2,945,186.02.  This restitution amount is based upon the tax loss and interest due to the Internal Revenue Service as a result of the conspiracy to which LEONARD pleaded guilty.  Specifically, as charged in Count 68 (and admitted to by defendant LEONARD), he conspired with his co-defendants JOHN S. LIPTON, VICTOR H. PRESTON, MICHAEL L. PUTNAM, WILLIAM H. NURICK, MARLYN D. HINDERS, DAVID L. JOHNSON, and others to conceal income from the Internal Revenue Service.

The government calculated the tax loss and interest due from each co-defendant as follows:

| | Genesis Fund Distributions | Tax Loss | Interest | Total (Tax Loss + Interest) |
|---|---|---|---|---|
| LEONARD | $ 1,767,940.45 | $342,180 | $   227,478.07 | $   569,658.07 |
| PRESTON | $     936,692.91 | $212,311 | $   137,184.35 | $   349,495.35 |
| PUTNAM | $ 1,543,705.56 | $308,272 | $   227,432.29 | $   535,704.29 |
| NURICK | $ 1,360,009.77 | $143,221 | $   123,476.15 | $   266,697.15 |
| HINDERS | $     925,061.52 | $71,964 | $    49,807.04 | $   121,771.04 |
| JOHNSON | $ 2,464,593.41 | $238,558 | $   178,868.92 | $   417,426.92 |
| LIPTON | $ 1,724,703.27 | $334,854 | $   349,579.20 | $   684,433.20 |
| | $10,722,706.89 | $1,651,360 | $1,293,826.02 | $2,945,186.02 |

Defendant LEONARD, who received the largest sum of Genesis Fund distributions, knew the object of the conspiracy was to

4402674.2

1  defraud the United States.  The conspiracy and defendant
2  LEONARD's actions in furtherance of the conspiracy resulted in an
3  actual loss of $2,945,186.02 to the Internal Revenue Service.
4  Pursuant to his plea agreement, defendant LEONARD should be
5  ordered to pay $2,945,186.02 in restitution to the Internal
6  Revenue Service.

7                              **II**

8                            **FACTS**

9  **A.   Offense Conduct**

10      From July 1994 to May 2005, defendants, including defendant
11  LEONARD, and co-conspirators Edward J. Lashlee ("Lashlee"), a
12  Costa Rican lawyer and others conspired to defraud the United
13  States, specifically the Internal Revenue Service, Department of
14  the Treasury of revenue: namely, the individual income taxes owed
15  by defendants on income they received from the Genesis Fund,
16  including the income received by defendant LEONARD.  (See Exhibit
17  1, Summary Schedule of Tax Calculations for Defendants.[1])
18  Defendant LEONARD further willfully attempted to evade the
19  assessment and payment of his individual income taxes due to the
20  United States Treasury.[2]  (See Exhibit 2, Individual Income
21  Summary for Richard B. Leonard.)

22

23  _____

24      [1]The exhibits referred to in this Memorandum have been filed
    separately in redacted form to delete any personal identifying
25  information such as social security number.  The document is
    entitled "Government's Exhibits in Support of Government's
26  Position Regarding Restitution of Defendant Richard B. Leonard."

27      [2]   The government has set forth the additional charged
    conduct in Exhibit 10, Narrative Summary of Case.

28

                              4                          4402674.2

1    Specifically, co-conspirator Lashlee opened bank accounts
2  for defendant LEONARD and others, including some Genesis Fund
3  investors, in the names of trusts into which distributions from
4  the Genesis Fund were then deposited.  (See, e.g., Exhibit 3,
5  Nominee Entities Utilized by Richard B. Leonard.)  Aided and
6  abetted by Lashlee, defendants and others used various bank
7  accounts held in the names of trusts or other entities to deposit
8  their Genesis Fund income.  Specifically, defendant LEONARD used
9  an account at Paine Webber UBS in the name of Ortega Management
10 Trust to deposit his Genesis Fund income.

11   In early 1999, the defendants, including defendant LIPTON,
12 and others, agreed to create "disclosed" Genesis Fund accounts in
13 order to report to the Internal Revenue Service some, but not
14 all, of their Genesis Fund distributions.  The "undisclosed"
15 accounts had been established before 1999 and were not to be
16 reported to the Internal Revenue Service.  Also in 1999,
17 defendant LIPTON, defendant LEONARD and others, caused the Costa
18 Rican lawyer to create Costa Rican corporations and related bank
19 accounts and obtain credit cards supported by those accounts for
20 the purpose of receiving Genesis Fund distributions.  These Costa
21 Rican corporations and related bank accounts were established for
22 the purpose of receiving Genesis Fund income in order to evade
23 reporting income to the IRS.  The name of the corporation
24 defendant LEONARD used for this purpose was Abetos Del Bosque
25 Lluvioso S.A. at Banco Elca.  Additionally, defendant LEONARD and
26 others recommended to some Genesis Fund investors that they use
27 the services of the same Costa Rican lawyer to create Costa Rican
28

4402674.2

1  corporations and bank accounts in order to receive distributions

2  from the Genesis Fund.  One example of defendant's evasion was

3  that on January 28, 1999, LEONARD caused International Centrix

4  check #5355 in the amount of $10,000 to be deposited into Account

5  #xx xxx4051 in the name of Ortega Management Trust at Paine

6  Webber (now UBS Paine Webber).  Another illustration of his

7  conduct is that during 2000, LEONARD utilized bank accounts in

8  the name of Abetos Del Bosque Lluvioso S.A., specifically the use

9  of credit cards issued on the accounts, in order to evade income

10  taxes.

11      During the calendar years 1999 through 2002, the defendants

12  did not fully report their Genesis Fund income on their personal

13  income tax returns, and no tax returns were filed on behalf of

14  the nominee entities.  Defendant LEONARD and other defendants

15  received income substantially in excess of the minimum filing

16  requirement amount set by the Internal Revenue Service which they

17  did not report to the Internal Revenue Service, and upon which

18  they owed significant individual income taxes for the years 1999

19  through 2002.  (See Exhibits 1, 2, and 4-9, Summary Schedule of

20  Tax Calculations and Individual Income Summary for each

21  defendant.)

22  **B.   Proceedings**

23      Defendants were indicted on March 30, 2005, in an 83-count

24  indictment charging violations of the conspiracy, wire and mail

25  fraud, tax fraud, money laundering, obstruction and forfeiture

26  statutes.  Shortly thereafter, defendants DAVID L. JOHNSON

27  ("JOHNSON"), WILLIAM H. NURICK ("NURICK"), DENISE TAYLOR-FRASER

28

4402674.2

1  ("D. TAYLOR-FRASER, WILLIAM TAYLOR-FRASER ("W. TAYLOR-FRASER")

2  and TERESA R. VOGT ("VOGT") were arrested pursuant to arrest

3  warrants in the Central District of California and subsequently

4  released on bond.

5       Defendants JOHN S. LIPTON ("LIPTON"), RICHARD B. LEONARD

6  ("LEONARD") and VICTOR H. PRESTON ("PRESTON") were arrested in

7  May 2005 and detained pursuant to provisional arrest warrants in

8  Costa Rica, and ultimately extradited to the Central District of

9  California in mid-June 2007.  This Court detained defendants

10 LIPTON, LEONARD and PRESTON, pursuant to the standards set forth

11 in the Bail Reform Act, 18 U.S.C. § 3142 et seq.  Defendant

12 LIPTON remains detained.  Defendant PRESTON pleaded guilty to

13 Count 68 of the Indictment and was released from custody

14 following his sentencing on October 7, 2009.

15      Pursuant to various stipulations by defendants and the

16 government, the Court initially set a trial date of January 15,

17 2008, and subsequently continued to April 1, 2009.  On September

18 19, 2008, Defendant NURICK filed a motion to continue the trial

19 date of April 1, 2009.  Additionally, on October 20, 2009, the

20 government filed a motion requesting the Court to sever counts 68

21 through 80 for all defendants, and to permit the parties to

22 proceed to trial on these counts on the then-trial date of April

23 1, 2009.  The Court granted both the motion to continue and the

24 government's motion to sever.  On March 11, 2010, the Court set a

25 new trial date of October 21, 2009 for counts 68 through 80, and

26 a subsequent trial date of March 17, 2009 for counts 1 through 67

27 and 81 through 83.  On October 5, 2009, the Court continued the

28

4402674.2

1    trial date on the tax charges to March 17, 2010 and ordered the

2    parties to agree to a date in August 2010 for the fraud, money

3    laundering and forfeiture charges.

4         On December 1, 2008, defendant LEONARD pleaded guilty to

5    Conspiracy to Defraud an Agency of the United States, in

6    violation of 18 U.S.C. § 371; and attempted tax evasion for the

7    calendar year 2000, in violation of 26 U.S.C. § 7201. (PSR ¶¶ 3-

8    5).  In the plea agreement, LEONARD agreed, inter alia, to make

9    full restitution for the losses caused by his activities.  The

10   government also noted in the plea agreement that it believed the

11   applicable amount of restitution was $3,000,000, but recognized

12   and agreed that this amount could change based on facts that came

13   to the attention of the parties prior to sentencing.

14        On January 30, 2009, the Probation Office disclosed the PSR.

15   In the PSR, the Probation Officer found that LEONARD's total

16   advisory guidelines offense level is 23, resulting in an advisory

17   sentencing guidelines range of 46-57 months.  After considering

18   all of the factors listed in 18 U.S.C. § 3553(a), the Probation

19   Officer recommended a sentence at the low end of the advisory

20   range, i.e., 46 months. (Rec. Let. at 3).

21        On February 11, 2009, the government filed a Sentencing

22   Memorandum.  With respect to incarceration, the government argued

23   in its Sentencing Memorandum that considering all of the §

24   3553(a) factors, and specifically LEONARD's health and the fact

25   that he had already served a significant term of incarceration, a

26   "time served" custodial sentence was warranted.  The government

27   also argued that LEONARD should be ordered to make complete

28

4402674.2

1  restitution for the criminal conspiracy to which he pleaded
2  guilty, and that the applicable amount of restitution, supported
3  by exhibits filed under seal, was $3 million.

4      The Court sentenced LEONARD on February 23, 2009 to "time
5  served," to be followed by three years supervised release.  The
6  Court deferred determination of any restitution to be paid by
7  LEONARD pursuant to 18 U.S.C. § 3664(d)(5).  The Court
8  subsequently scheduled a Restitution Hearing for July 27, 2009.
9  On July 27, 2009, the hearing was continued again at the request
10 of defendant LEONARD to enable him additional time to review the
11 government's computation of the tax loss arising from the
12 conspiracy.  The hearing was continued until October 5, 2009.
13 After receiving permission from the Court, the government
14 disclosed its supporting documentation to defendant LEONARD and
15 his retained expert, Mr. Alfonso Ristuccia.  On October 5, 2009,
16 defendant LEONARD sought to continue the restitution hearing a
17 third time based upon the need for additional time to review and
18 analyze the government's tax loss calculation.  The restitution
19 hearing was continued to December 7, 2009.

20                            **III**

21                        **ARGUMENT**

22 **A.   Defendant Should Be Ordered to Make Complete Restitution for**
       **the Criminal Conspiracy to Which He Pleaded Guilty**
23

24     **1.   The Total Loss to the Internal Revenue Service Is at**
            **Least $3 Million**
25
26     The plea agreement allowed the parties to argue to the Court
27 the amount of restitution to be imposed in this matter.
28

                              9                          4402674.2

1  Paragraph 9 of the plea agreement states in full:

2       *Defendant agrees to make full restitution for the*
        *losses caused by defendant's activities. The Offices*
3       *currently believe that the applicable amount of*
        *restitution is $3,000,000, but recognize and agree that*
4       *this amount could change based on facts that come to*
        *the attention of the parties prior to sentencing.*
5       *Defendant further agrees that defendant will not seek*
        *the discharge of any restitution obligation, in whole*
6       *or in part, in any present or future bankruptcy*
        *proceeding.*

7       The government's position is that the applicable amount of

8  restitution is $2.945 million, as supported by the exhibits

9  submitted concurrently with this filing.  Conservatively, as set

10  forth in the government's exhibits, the Genesis Funds that were

11  distributed to the defendants were $10,722,706.89.[3] (Exhibit 1,

12  Summary Schedule of Tax Calculations).  This amount does not

13  include distributions to Genesis clients.  To be conservative,

14  the government has subtracted the alleged capital contributions

15  of all defendants except LIPTON.[4]  At a conservative capital gains

16  tax rate of 25%, the amount of tax loss would be $1,651,360.00,

17

18

19      [3]  The government had originally calculated the total
20  unreported income of the co-defendants to be $12,637,718.88.
    This figure included $1.3 million in income that George "Bo"
21  Boeck received form the Genesis Fund. Because the government's
    restitution was capped at $3,000,000 under the plea agreement,
22  the government removed Boeck's income from the calculation
    because there was a question as to whether Mr. Boeck was a U.S.
23  citizen.  After reviewing the calculations with Mr. Ristuccia,
    the government removed an additional $615,011.99 in income it
24  attributed to the conspiracy because there was a chance that the
    income was double-counted.
25

26      [4]  Defendant LIPTON's purported capital contributions are
    not deducted because there is no evidence to support the $2.8
27  million he claims to have contributed. (Exhibit 4, Individual
    Income Summary for John S. Lipton.)
28

4402674.2

not including interest.[5]  With interest, the total loss rises to
$2.945 million.  This amount includes $342,180, the amount of
federal income taxes that defendant Leonard evaded on his
$1,767,940.45 in Genesis Fund income. (See Exhibit 1).

## 2.   Defendant Is Liable for All Actual Losses Caused By the Tax Fraud Conspiracy

In determining the appropriate amount of restitution, this
Court must determine the actual losses caused by defendant's
fraudulent conduct -- that is, to compare 'what actually happened
with what would have happened if [he] had acted lawfully.'"
United States v. Bussell, 414 F.3d 1048, 1061 (9th Cir. 2005).
Under this analysis, because defendant was convicted of a
conspiracy to defraud an agency of the United States, the
Internal Revenue Service, the actual loss for restitution
purposes is not restricted to the loss resulting from conduct
underlying particular substantive counts of conviction, e.g.,
defendant's individual income tax evasion.  Rather, as the United
States Court of Appeals for the Ninth Circuit has repeatedly
emphasized in construing the statutes governing restitution, the
correct measure of loss encompasses "the amount of damages caused
by an entire scheme that is in the nature of a conspiracy rather

---

[5]   Some co-conspirators did not file tax returns, while
others omitted their Genesis Fund income from returns filed with
the IRS.  Still others reported some, but not all Genesis Fund
income. Finally, some of those who reported Genesis Fund income
reported it as ordinary income while others reported the monies
as capital gains.  The government has calculated all co-
conspirator taxes at the capital gains rate.  The capital gains
rate is lower than the applicable marginal individual income tax
rates, thus crediting defendants an additional benefit.

11                                          4402674.2

1  than only in the amount caused by a particular act," including

2  victims' losses arising through "the duration of the entire

3  fraudulent scheme." United States v. Kubick, 205 F.3d 1117,

4  1128-29 (9th Cir. 1999) (construing the scope of restitution

5  where defendant was convicted of conspiracy to commit bankruptcy

6  fraud; accord United States v. DeGeorge, 380 F.3d 1203, 1220 (9th

7  Cir. 2004); United States v. Grice, 319 F.3d 1174, 1177-78 (9th

8  Cir. 2003); United States v. Reed, 80 F.3d 1419, 1423 (9th Cir.

9  1996) (observing that 1990 amendment to Victim Witness Protection

10  Act ("VWPA") provides that courts can order restitution for

11  damage resulting from any conduct that is part of the

12  conspiracy).

13      The government's burden in establishing the proper amount of

14  loss for restitution purposes is preponderance of the evidence.

15  18 U.S.C. § 3664(e); United States v. Follet, 269 F.3d 996, 2002

16  (9th Cir. 2001).  Where the precise amount of restitution is

17  difficult to determine, the court is authorized to reach an

18  expeditious, reasonable determination of restitution by resolving

19  uncertainties with the aim of achieving fairness to the

20  victim(s).  United States v. Gordon, 393 F.3d 1044, 1054-55 (9th

21  Cir. 2004).  In determining the restitution amount, the court

22  should focus on the remedial purpose of restitution, which is

23  "'to restore the defrauded party to the position [it] would have

24  had absent the fraud.'"  Id. at 1053 (citation omitted) (emphasis

25  in original).

26      Additionally, restitution exceeding the loss of the count of

27  conviction, however, may be ordered when the defendant agrees to

28

12

1  such in the plea agreement.  <u>United States v. Lorenzini</u>, 71 F.3d

2  1489, 1495 n. 8 (9th Cir. 1995).  In this case, the defendant

3  agreed, pursuant to his plea agreement, to pay "full restitution

4  for the losses caused by defendant's activities."  (Plea

5  Agreement at ¶ 9.)  LEONARD's activities included the conspiracy

6  to defraud the IRS in addition to his willful attempt to evade

7  his own income taxes.  <u>See</u> <u>United States v. Lawrence</u>, 189 F.3d

8  838, 846 (9th Cir. 1999) (when count of conviction "includes a

9  scheme, conspiracy, or pattern of criminal conduct as an element

10 of the offense," restitution order may include acts of related

11 conduct for which the defendant was not convicted).  The loss

12 amount attributable to the conspiracy to defraud an agency of the

13 United States is $2.945 million.  (<u>See</u> Exhibit 1.)  Accordingly,

14 the restitution order should include the entire loss to the

15 Internal Revenue Service, which the government has calculated to

16 be $2.945,186.02.

17      **3.   <u>The Court Should Reject Any Argument That LEONARD's</u>**
        **<u>Distributions Were Not His Personal Income</u>**

18      The government anticipates that LEONARD may contend at the

19 restitution hearing that the distributions he received should be

20 considered corporate income and not his personal income.  In

21 LEONARD's sentencing memorandum, filed previously with the Court,

22 he asserted that his "shares in the Genesis Fund were owned by a

23 corporation called Abetos del Lluvioso" and that "the assets of

24 this corporation are now worthless."  (LEONARD Sentencing Mem. at

25 7.)  Any argument by LEONARD that the distributions he received

26 were corporate income and not his personal income should be

27

28                              13                    4402674.2

1  rejected by the Court.

2      In his guilty plea agreement, LEONARD agreed and stipulated

3  to the statement of facts set forth in the Factual Basis for

4  Guilty Plea of Richard B. Leonard.  Defendant LEONARD admitted

5  that his Costa Rican company was created for the purpose of

6  evading taxes:

> *Aided and abetted by co-conspirator Lashlee, defendants
> and others used various bank accounts held in the names
> of trusts and other entities to deposit their Genesis
> Fund income. Specifically defendant LEONARD used an
> account at Paine Webber UBS in the name of Ortega
> Management Trust to deposit his Genesis Fund income.*
>
> *. . .*
>
> *In 1999, defendant LIPTON, acting for himself,
> defendant LEONARD and others, caused the Costa Rican
> lawyer to create Costa Rican corporations and related
> bank accounts and obtain credit cards supported by
> those accounts for the purpose of receiving Genesis
> Fund distributions.  These Costa Rican corporations and
> related bank accounts were established for the purpose
> of receiving Genesis Fund income in order to evade
> reporting income to the IRS.  The name of the
> corporation defendant LEONARD used for this purpose was
> Abetos Del Bosque Lluvioso S.A. at Banco Elba.*

(Plea Agreement Factual Basis at ¶¶ 19, 21.) Given that LEONARD

has previously admitted that the Abetos Del Bosque Lluvioso

corporation was a nominee entity created to receive his Genesis

Fund distributions, he should not be permitted to argue now that

the distributions sent to this corporation were not his personal

income and should not be included in the tax loss calculations.

Consequently, the total loss to the IRS as a result of the

charges to which LEONARD pleaded guilty should include the total

tax and interest due resulting from the Genesis Fund

distributions received by LEONARD.  (See Exhibit 1.)

14

4402674.2

1

### 4.   **LEONARD Has Sufficient Information To Contest The Government's Restitution Calculation**

2

3      Defendant LEONARD has asked this Court to decline ordering

4  any restitution in this case because he cannot defend himself

5  against the government's position.  (See Response of Defendant

6  Leonard to Government's Memorandum Regarding Restitution From

7  Richard Leonard (Docket Entry No. 774).)  Specifically, defendant

8  LEONARD claims that restitution is inappropriate because he

9  cannot speak with his co-defendants about their tax liabilities.

10  The government has provided defendant LEONARD with sufficient

11  information to challenge its restitution calculation.  Defendant

12  LEONARD was provided with copies of each item of income that the

13  government included in its calculation of unreported income.  In

14  most instances, this was a cancelled check.

15      Defendant LEONARD joined this conspiracy at his own peril.

16  Defendant LEONARD received $1,767,940.45 in income from the

17  Genesis Fund.  As admitted in his guilty plea to Count 68, he

18  conspired with PRESTON, PUTNAM, NURICK, HINDERS, JOHNSON, and

19  LIPTON to create "undisclosed" accounts to hide their Genesis

20  fund distribution from the IRS.  LEONARD joined this conspiracy

21  willingly and benefitted from it greatly.  In fact, defendant

22  LEONARD caused the largest tax loss of all the defendants.  (See

23  Exhibit 1.)  When he joined the conspiracy, defendant LEONARD

24  knew that PRESTON, PUTNAM, NURICK, HINDERS and JOHNSON received

25  significant income from the Genesis Fund.  He also agreed with

26  his co-defendants to hide this income from IRS.

27      Indeed, TERESA R. VOGT, the administrator of the Genesis

28

4402674.2

1  Fund, provided evidence that corroborates the government's

2  calculation.  According to VOGT, defendants LEONARD, NURICK,

3  JOHNSON, PRESTON, HINDERS, and LIPTON received a total of

4  $13,481,955.21 in Genesis Fund distributions. As the Genesis Fund

5  administrator, VOGT admitted to issuing distribution checks to

6  the nominee entities held by LEONARD and his co-conspirators.

7  (See VOGT Plea Agreement, Exhibit A, ¶¶ 8-13.)

8       Accordingly, defendant LEONARD cannot complain that he has

9  had insufficient information or time to contest the government's

10 restitution calculation.  Defendant LEONARD should be ordered to

11 pay restitution in the amount of $2,945,185.02 as calculated by

12 the government.

13      **5.   LEONARD's Ability to Pay Should Not Be Considered in
            Determining the Restitution Amount**

14

15      The government also anticipates that LEONARD may ask the

16 Court to consider his ability to pay in determining the

17 restitution amount.  In his previously filed sentencing

18 memorandum, defendant LEONARD agreed that a restitution hearing

19 should be scheduled and stated that at such a hearing "the Court

20 can assess Mr. Leonard's ability to pay whatever restitution is

21 ordered."  (LEONARD Sentencing Mem. at 8.)  The Court should not

22 consider LEONARD's ability to pay in determining the restitution

23 amount.

24      As noted by the Ninth Circuit, Congress passed the Mandatory

25 Victim Restitution Act of 1996 ("MVRA") as a supplement to the

26 Victim and Witness Protection Act of 1982 ("VWPA").  18 U.S.C. §

27 3663. See Grice, 319 F.3d at 1177.  Restitution under the VWPA is

28

16                                    4402674.2

discretionary, and the district court must consider a defendant's resources when deciding if restitution is appropriate. 18 U.S.C. § 3663(a)(1)(A), (B).  The MVRA, however, eliminates district courts' discretion with respect to restitution for certain classes of crimes.  18 U.S.C. § 3663A(a)(1). If the MVRA applies, a restitution order is mandatory regardless of the defendant's ability to pay. Id.; see also Grice, 319 F.3d at 1177.  The offenses to which the MVRA applies include offenses against property under Title 18, including any offense committed by fraud or deceit. 18 U.S.C. § 3663A(c)(1)(A)(ii); see also Kubick, 205 F.3d at 1128-29 (ordering mandatory restitution on convictions for conspiracy to commit bankruptcy fraud and conspiracy to impede and impair the IRS, each in violation of 18 U.S.C. § 371).

Defendant LEONARD pleaded guilty, in part, to conspiracy to defraud an agency of the United States, in violation of 18 U.S.C. § 371. Moreover, defendant LEONARD specifically agreed to pay restitution for the amount of loss caused by his conduct.  (Plea Agreement ¶9.)  Accordingly, the MVRA applies to this case, restitution is mandatory, and the Court should not consider LEONARD's ability to pay in determining the restitution amount.

///

///

///

4402674.2

**IV**

**CONCLUSION**

For all the foregoing reasons, the government respectfully requests the Court to order defendant LEONARD to make restitution to the Internal Revenue Service in the amount of $2,945,186.02 for the Criminal Conspiracy to which he pleaded guilty.


Date: November 23, 2009          Respectfully Submitted,


                                 GEORGE S. CARDONA
                                 Acting United States Attorney

                                 CHRISTINE C. EWELL
                                 Assistant United States Attorney
                                 Chief, Criminal Division



                                  /s/Ellen Quattrucci
                                 LORI A. HENDRICKSON
                                 ELLEN M. QUATTRUCCI
                                 DANNY N. ROETZEL
                                 Trial Attorneys
                                 Tax Division

                                 Attorneys for Plaintiff
                                 United States of America

4402674.2