LAW OFFICE OF STEPHEN G. FRYE
Stephen G. Frye (CSBN 196728)
316 West Second St., Suite 1202
Los Angeles, California 90012
Telephone: (213) 621-1600
Facsimile: (213) 621-1644
Email: sgf@sgfryelaw.com

Attorney for RICHARD LEONARD

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| United States of America,<br><br>Plaintiff.<br><br>vs.<br><br>**RICHARD LEONARD**<br><br>Defendant. | CR 05-316-DSF<br><br>**SECOND SUPPLEMENTAL SENTENCING POSITION MEMORANDUM OF DEFENDANT RICHARD LEONARD REGARDING RESTITUTION**<br><br>Date: N/A<br>Time: N/A<br>Place: Hon. Dale S. Fischer<br>Courtroom 840<br>U.S. District Court<br>255 East Temple Street<br>Los Angeles, CA 90012 |

**MEMORANDUM**

Defendant RICHARD LEONARD ("Mr. Leonard") respectfully urges the Court to decline to order restitution, beyond the amounts conceded by Mr. Leonard that he owes. The government did not prove by a preponderance of the evidence, the amount of tax loss it claims was caused by Mr. Leonard.

At the restitution hearing the government did not sufficiently prove an accurate restitution amount. Because of the incompleteness of the records relied upon by the government,

the government likely will never sufficiently prove an accurate restitution amount. Moreover, Mr. Leonard lacks access to those who could assist him in rebutting the government's assessment, so he has had no meaningful opportunity to rebut the government's claims. Proof of a sufficiently accurate amount would complicate or prolong sentencing to a degree that the need to provide restitution to the government is outweighed by the burden on the sentencing process. Thus, Mr. Leonard urges the Court not to impose an order of restitution beyond that admitted by Mr. Leonard that he owes.

Additionally, Mr. Leonard should not be liable for the taxes allegedly owed by any co-conspirator. Each of the taxpayers whose tax liabilities the government is attempting to collect from Mr. Leonard as restitution are co-defendants in this case. Thus, each is represented by counsel and unavailable for Mr. Leonard to interview regarding the accuracy of the IRS's calculations. Mr. Leonard also has been denied access to others who could shed light on the deposit items of co-conspirators that the IRS designates as income. Mr. Leonard has had no meaningful opportunity to rebut the government's claims.

Finally, with regard to the taxes assessed by the IRS against Mr. Leonard personally, the government should deduct from this amount taxes paid by his children on the amounts they received. Mr. Leonard should not be obligated to pay taxes on these amounts. His children received the money and were obligated to pay the taxes, which least one of them apparently did.

# I.

# FACTS

## A. The Restitution Hearing.

On January 11, 2010, the Court conducted a Restitution Hearing. The primary witness was Revenue Agent Jean Pugh Ostrowski ("Agent Pugh"). Agent Pugh testified that she had prepared an IRS Form 4549-A, commonly known as the Revenue Agent's Report, for tax years 1999, 2000, 2001, and 2002, for Mr. Leonard and his wife, as well as for defendants Victor Preston, Michael Putnam, William Nurick, Marlyn Hinders, David Johnson, and John Lipton. (Transcript of Restitution Hearing, attached hereto as Exhibit A, at p. 10, line 13 – p. 11, line 6; p. 75, line 19 et seq.). Essentially, the Forms 4549-A constitute the IRS's calculation of what it believes a taxpayer owes in taxes for a particular year. (Id. at p. 10, lines 17-24). Agent Pugh testified that she prepared the 4549-A Forms without input from Mr. Leonard or the other taxpayers. (Id. at p. 11, lines 7-9; see also Id. at p. 75, lines 19-23).

Agent Pugh testified that she used a modified bank deposit method of calculating the taxes allegedly owed on the Forms 4549-A. (Id. at p. 63, line 18 – p. 64, line 6). Under this method, the IRS obtains the taxpayer's bank statements and all items of deposit and the deposit slips. (Id. at p. 64, lines 8-13). The IRS needs the deposit items and deposit slips to verify which items of deposit constitute income. (Id. at p. 64, line 14 – p. 65, line 8). For example, if a taxpayer deposited a paycheck and a gift check into his account at the same time, the paycheck

constitutes income to the taxpayer whereas the gift check does not. (Id.).

In Mr. Leonard's case, the IRS's tax calculations were made primarily from a bank summary (the "Bank Summary") produced by Banco Interfin, a Central American bank, for the account of Abetos del Bosque Lliuvioso, S.A. ("Abetos"), and admitted as Defense Exhibit A-1, bate stamped pages 404-409. (Id. at p. 20, lines 14-20). The Bank Summary was not a bank statement and did not include deposit slips or deposit items. (See Id. at p. 20, line 22 - p. 21, line 2). In fact, the Bank Summary did not even "total the proper deposits." (Id. at p. 30, lines 2-3).

The Bank Summary was in Spanish; Agent Pugh admitted that she does not speak Spanish, although she did obtain translations for some of the entries. (Id. at p. 21, lines 7-9). Agent Pugh never discussed with anyone at Banco Interfin how properly to read the Bank Summary. (Id. at lines 5-6; p. 40, lines 9-11).

Costa Rican attorney Arnoldo Tinoco Andre ("Mr. Tinoco") created Abetos. (See Id. at p. 24, line 25 - p. 25, line 10). Although most of the deposits identified on the Bank Summary were made by Mr. Tinoco or at his direction, Agent Pugh never discussed any entry with Mr. Tinoco. (Id. at p. 27, lines 15-19). In fact, Agent Pugh never talked to Mr. Tinoco at all, even though he appears on the government's witness list as a trial witness. (Id.). She also never spoke to Teresa Vogt or to Jay Lashlee, both of whom made deposits attributed as income to Mr. Leonard and both of whom have agreed to cooperate with the government. (See Id. at p. 32, lines 5-25).

Agent Pugh testified that she attempted to corroborate entries on the Bank Summary with as much documentation as possible. (Id. at p. 24, lines 17-18). Even without any documentation, however, all items appearing on the Bank Summary were deemed income to Mr. Leonard. (See Id. at p. 37, lines 10-17).

Agent Pugh testified that she also attributed as income to Mr. Leonard deposits made to accounts the IRS believed to be controlled by Mr. Leonard's children. Agent Pugh admitted that the government generally cannot collect the same tax more than once. (Id. at p. 70, lines 2-5). Even though Mr. Leonard's son Paul paid taxes on the money he received, Agent Pugh nevertheless assessed taxes against Mr. Leonard for amounts received by Paul Leonard. Agent Pugh apparently reasoned that, because Mr. Leonard's funds allegedly generated the money to his son Paul, Mr. Leonard was liable to pay the tax, even though Paul had already paid it. (Id. at p. 71, lines 21-23).

With regard to the other defendants, the alleged tax liabilities of whom the government seeks to collect from Mr. Leonard as restitition, Agent Pugh testified that the IRS had better documentation of deposit items because many of the bank accounts examined were U.S. accounts. (See Id. at p. 76, lines 1-5). Agent Pugh, however, never discussed the deposit items with the taxpayer, Mr. Tinoco, Ms. Vogt, Mr. Lashlee or anyone else who created the deposit items or understood what the deposit items represented. (See Id. at 6-9).

**B. Amounts that Mr. Leonard Concedes He Owes.**

In paragraph 19 of the factual basis to the plea agreement, Mr. Leonard admitted that, aided and abetted by co-conspirator Jay Lashlee, Mr. Leonard "used an account at Paine Weber UBS in the name of Ortega Management Trust to deposit Genesis Fund income." In the government's calculation of Mr. Leonard's 1999 taxes, the government included $10,000 deposited from the Genesis Fund to Ortega Management Trust as taxable income to Mr. Leonard. (See Exhibit B to Sentencing Position Memorandum of Defendant Richard Leonard Regarding Restitution Filed Under Seal). Mr. Leonard concedes that he owes taxes, plus penalties and interest, on this amount.

Mr. Leonard concedes that he and his wife used credit cards supported by the Abestos account to purchase various items for their use. Mr. and Mrs. Leonard controlled these cards and the items purchased with the cards inured to their exclusive benefit. This income should have been reported to the IRS, and Mr. Leonard owes back taxes on these amounts. Exhibit B, attached hereto, includes all income amounts on which Mr. Leonard concedes he owes taxes, plus penalties and interest, including credit card purchases during tax years 2003 and 2004 for which the government is not seeking restitution.

## II.

## ARGUMENT

In paragraph 9 of the Plea Agreement, Mr. Leonard agreed to make restitution for the losses caused by his activities. Mr. Leonard, however, did not agree to a specific amount of restitution. The government bears the burden of proving the restitution amount by a preponderance of the evidence. United

States v. Follet, 269 F.3d 996, 1002 (9th Cir. 2001). The Court, however, may decline to order restitution when "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. §3663A(c)(3)(B). The government did not, cannot, and can never sufficiently prove an accurate restitution amount, and proof of a sufficiently accurate amount would complicate or prolong sentencing to a degree that the need to provide restitution to the government is outweighed by the burden on the sentencing process. Thus, Mr. Leonard urges the Court not to impose an order of restitution beyond that admitted by Mr. Leonard that he owes.

**A. The Court Should Reject the Government's Attempt to Collect Taxes from Mr. Leonard by Designating as Income all Entries on the Bank Summary.**

The government cannot meet its burden of proof by relying on the Bank Statement. Agent Pugh admitted that the Bank Summary was not a bank statement and did not include deposit slips or deposit items. She testified that deposit items and deposit slips are necessary in order to determine which items in a deposit entry constitute income and which ones do not. In fact, she admitted that the Bank Summary did not even "total the proper deposits."

Agent Pugh testified that she attempted to corroborate entries on the Bank Summary with as much documentation as possible. Even without any documentation, however, all items

appearing on the Bank Summary were deemed income to Mr. Leonard. The Bank Summary was in Spanish. Agent Pugh does not speak Spanish. Agent Pugh never discussed with anyone at Banco Interfin how properly to read the Bank Summary. She never discussed any entry on the Bank Summary with Mr. Tinoco, with Ms. Vogt, with Mr. Lashlee, or with Mr. Leonard. The Court should reject the government's attempt to collect taxes from Mr. Leonard by designating as income all entries on the Bank Summary. The government has not and cannot meet its burden of proof by relying on the Bank Statement.

A defendant must be given notice and the opportunity to speak regarding restitution. United States v. Rice, 38 F.3d 1536, 1546 (9th Cir. 1994). The opportunity to speak, however, must be meaningful. As noted by Mr. Leonard in his previous restitution filings, Mr. Leonard has been denied access to Mr. Tinoco, who created the accounts the deposits of which the government deems income to Mr. Leonard. He has also been denied access to Ms. Vogt, who is a co-defendant in this case. Thus, he cannot assess the accuracy of the government's claims that all entries on the Bank Summary constitute income to Mr. Leonard. It is unfair impose restitution on Mr. Leonard based on information that he has insufficient opportunity to rebut. The government has not and cannot meet its burden of proof by relying on the Bank Statement.

**B. The Court Should not Order Restitution for Taxes Allegedly Owed by Mr. Leonard's Co-Conspirators Because Mr. Leonard has had Insufficient Opportunity to Assess the Accuracy of the IRS's Tax Assessments for these Co-Conspirators.**

Each of the taxpayers whose tax liabilities the government is attempting to collect from Mr. Leonard as restitution are co-defendants in this case. Thus, each is represented by counsel and unavailable for Mr. Leonard to interview regarding the accuracy of the IRS's calculations. Moreover, Mr. Leonard has been denied access to Mr. Tinoco and to Ms. Vogt, each of whom could shed light on the deposit items of co-conspirators that the IRS designates as income.

Without access to these taxpayers, and without access to Mr. Tinoco and Ms. Vogt, neither Mr. Leonard nor the Court can fully assess the accuracy of the government's calculations. It is unfair to impose restitution on Mr. Leonard based on information that he has insufficient opportunity to rebut. Because Mr. Leonard has no meaningful opportunity to speak regarding restitution based on the tax liability of co-conspirators, the Court should not order restitution for taxes allegedly owed by these individuals.

**C. The Court Should not Order Restitution for Taxes Allegedly Owed on Funds Provided to Mr. Leonard's Children.**

The government seeks to collect taxes from Mr. Leonard on $122,245.51 allegedly received from the Genesis Fund and paid to Mr. Leonard's children. As argued in his previous restitution filings, Mr. Leonard should not be obligated to pay taxes on amounts received by his children. His children received the money and should have been obligated to pay the taxes, which at least Paul Leonard apparently did. Paul Leonard testified that he reported on his 2001 and 2002 tax returns the Genesis Fund payments that he received.

**III.**

**CONCLUSION**

Mr. Leonard respectfully urges the Court to decline to order restitution, beyond the amounts conceded by Mr. Leonard that he owes. The government did not and cannot prove, with sufficient specificity, the amount of tax loss caused by Mr. Leonard.

Dated: March 1, 2010

Respectfully submitted,

LAW OFFICE OF STEPHEN G. FRYE

By:________/s/______________
Stephen G. Frye
Attorney for RICHARD LEONARD

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and not a party to the within action; my business address is: 633 West Fifth St., Suite 2800, Los Angeles, California 90071

On March 1, 2010, I served **SENTENCING POSITION MEMORANDUM OF DEFENDANT RICHARD LEONARD REGARING RESTITUTION FILED UNDER SEAL** by serving same on the U.S. Probation Officer by electronic mail:

USPO Michael Barrett
United States Probation Office
312 North Spring Street
Los Angeles, CA 90012
Fax: 213-894-3627

**[x ] (FEDERAL)** I declare that I am employed in the offices of a member of this Court at whose direction the service was made.

Executed on March 1, 2010, at Los Angeles, California.

| Stephen G. Frye | /s/ |
|---|---|
| PRINT NAME | SIGNATURE |