1   JOHN A. DiCICCO
    Acting Assistant Attorney General
2   LORI A. HENDRICKSON
    Trial Attorney (Ohio BN: 0067831)
3   ELLEN M. QUATTRUCCI
    Trial Attorney (D.C. BN: 462103)
4   DANNY N. ROETZEL
    Trial Attorney (Missouri BN: 34879)
5   Tax Division, Western
    Criminal Enforcement Section
6       P.O. Box 972
        Washington, D.C. 20044
7       Telephone: (202) 514-9370
        Facsimile: (202) 514-9623
8       E-mails:  Lori.A.Hendrickson@usdoj.gov
                  Ellen.M.Quattrucci@usdoj.gov
9                 Danny.N.Roetzel@usdoj.gov

10  Attorneys for Plaintiff
    UNITED STATES OF AMERICA

11

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                   WESTERN DIVISION

15  UNITED STATES OF AMERICA,   ) NO. CR 05-316-DSF
                                )
16          Plaintiff,          ) **GOVERNMENT'S RESPONSE TO THE SECOND**
                                ) **SUPPLEMENTAL SENTENCING POSITION**
17          v.                  ) **MEMORANDUM OF DEFENDANT RICHARD**
                                ) **LEONARD REGARDING RESTITUTION**
18  JOHN S. LIPTON, et al.,     )
                                ) RESTITUTION HEARING
19          Defendants.         )
                                ) Date: tbd
20                              ) Time: tbd
                                )
21  _____ )

22       Plaintiff, United States of America, by and through its

23  counsel of record, Trial Attorneys Lori A. Hendrickson, Ellen M.

24  Quattrucci, and Danny N. Roetzel, Department of Justice, Tax

25  Division, hereby files its Response to the Second Supplemental

26  Sentencing Position Memorandum of Defendant Richard Leonard

27  Regarding Restitution.

28

                                                        4402674.2

1      The government's position is based on the attached

2 memorandum of points and authorities; the record and file in this

3 case; and any additional evidence and argument that the Court

4 receives prior to or at any subsequent hearing on defendant

5 LEONARD's restitution.

6

7 Dated: March 5, 2010         Respectfully Submitted,

8

9                           JOHN A. DiCICCO
                          Acting Assistant Attorney General

10

11                           /s/Ellen Quattrucci
                          LORI A. HENDRICKSON
                          ELLEN M. QUATTRUCCI

12                           DANNY N. ROETZEL
                          Trial Attorneys

13                           Tax Division

14                           Attorneys for Plaintiff
                          United States of America

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                      2

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

### I

3

### BACKGROUND AND SUMMARY ARGUMENT

4     Defendant RICHARD B. LEONARD ("LEONARD") pleaded guilty to

5 Count 68 of the Indictment which charges a conspiracy to defraud

6 the United States and a one-count Information charging tax

7 evasion.  In his Plea Agreement, defendant LEONARD admitted that

8 he caused a tax loss of more that $2.5 million for purposes of

9 calculating his Base Offense Level.[1]  Leonard Plea Agreement at ¶

10 17 (Docket Entry 681).  He further admitted that, as part of the

11 conspiracy, "Costa Rican corporations and related bank accounts

12 were established for the purpose of receiving Genesis Fund income

13 in order to evade reporting income to the IRS."  Id., Appendix A

14 at ¶ 21  Defendant LEONARD admitted that the name of his Costa

15 Rican corporation was Abetos del Bosque Lluvioso S.A. and that he

16 "utilized bank accounts in the name of Abetos del Bosque Lluvioso

17 S.A." Id. at ¶¶ 21,27c.  With respect to the taxes he owed,

18 defendant LEONARD admitted they were significant:

19                 During the calendar years 1999 through 2002,
                defendant LEONARD received income
20              substantially in excess of the minimum filing
                requirement amount set by the Internal
21              Revenue Service which he did not report to
                the Internal Revenue Service, and upon which
22              he owed significant individual income taxes
                for the years 1999 through 2002.

23
      Id. at ¶26 (emphasis added).
24
          Defendant LEONARD now claims that he should be order to pay
25

26      [1]Defendant LEONARD agreed to pay restitution for "losses

27 caused by his activities" but did not agree to a specific amount
   of restitution.  Leonard Plea Agreement at ¶ 9.

28

                          3                          4402674.2

1  restitution on the amount of "tax, plus penalties and interest"
2  owed for the $144,836.13 he admits he received in income from the
3  Genesis Fund.  See Defendant's Exhibit B attached to his Second
4  Supplemental Sentencing Position Memorandum of Defendant Richard
5  Leonard (Docket Entry 942).  Defendant LEONARD argues that the
6  government's calculation of restitution should be rejected for
7  three reasons.  First, defendant LEONARD claims that the
8  government failed to meet its burden of proof because Revenue
9  Agent Pugh's methodology for determining defendant LEONARD's tax
10 due and owing is faulty.  Second, defendant LEONARD claims he
11 should not be ordered to pay restitution for his co-conspirator's
12 tax loss because he has not been able to discuss the calculations
13 with his co-defendants.  And third, defendant LEONARD claims he
14 should not be ordered to pay restitution concerning the amounts
15 paid to members of his family because it was the family member's
16 obligation to pay the taxes.  These arguments ignore the
17 admissions in defendant LEONARD's plea agreement, admissions of
18 co-defendants, and the applicable tax law.

19      The government has proved, by a preponderance of the
20 evidence, that defendant LEONARD and his co-conspirators caused a
21 tax loss of $2,915,427.16.  Accordingly, this Court should order
22 defendant LEONARD to pay restitution to the IRS in the amount of
23 $2,915,427.16.

24                              **II**

25                     **PROCEDURAL HISTORY**

26      On December 1, 2008, defendant LEONARD pleaded guilty to
27 Conspiracy to Defraud an Agency of the United States, in

28

                              4                      4402674.2

1  violation of 18 U.S.C. § 371; and attempted tax evasion for the
2  calendar year 2000, in violation of 26 U.S.C. § 7201. PSR ¶¶ 3-5.
3  In the plea agreement, defendant LEONARD agreed, inter alia, to
4  make full restitution for the losses caused by his activities.
5  The government also noted in the plea agreement that it believed
6  the applicable amount of restitution was $3,000,000, but
7  recognized and agreed that this amount could change based on
8  facts that came to the attention of the parties prior to
9  sentencing.

10      On January 30, 2009, the Probation Office disclosed the PSR.
11  In the PSR, the Probation Officer found that LEONARD's total
12  advisory guidelines offense level is 23, resulting in an advisory
13  sentencing guidelines range of 46-57 months.  After considering
14  all of the factors listed in 18 U.S.C. § 3553(a), the Probation
15  Officer recommended a sentence at the low end of the advisory
16  range, i.e., 46 months. Rec. Let. at 3.

17      On February 11, 2009, the government filed with the Court a
18  Sentencing Memorandum.  With respect to incarceration, the
19  government argued in its Sentencing Memorandum that considering
20  all of the § 3553(a) factors, and specifically defendant
21  LEONARD's health and the fact that he had already served a
22  significant term of incarceration, a "time served" custodial
23  sentence was warranted.  The government also argued that
24  defendant LEONARD should be ordered to make complete restitution
25  for the criminal conspiracy to which he pleaded guilty, and that
26  the applicable amount of restitution, supported by exhibits filed
27  under seal, was $3 million.

28

4402674.2

1    The Court sentenced defendant LEONARD on February 23, 2009
2  to "time served," to be followed by three years supervised
3  release.  The Court deferred determination of any restitution to
4  be paid by defendant LEONARD pursuant to 18 U.S.C. § 3664(d)(5).
5  The Court subsequently scheduled a Restitution Hearing for July
6  27, 2009.  On July 27, 2009, the hearing was continued at the
7  request of defendant LEONARD to enable him additional time to
8  review the government's computation of the tax loss arising from
9  the conspiracy.  The hearing was continued until October 5, 2009.
10  After receiving permission from the Court, the government
11  disclosed its supporting documentation to defendant LEONARD and
12  his retained expert, Mr. Alfonso Ristuccia.  On October 5, 2009,
13  defendant LEONARD sought to continue the restitution hearing a
14  based upon the need for additional time to review and analyze the
15  government's tax loss calculation.  The restitution hearing was
16  continued to December 7, 2009.  On December 3, 2009, the Court,
17  pursuant to a joint stipulation of the parties, continued the
18  restitution hearing to January 11, 2010 due to defense counsel's
19  scheduling conflict.  A restitution hearing was held on January
20  11, 2010.  During the hearing, the Court ordered Revenue Agent
21  Pugh to recalculate the restitution amount set forth on the
22  record and resubmit her calculation to defendant LEONARD.  The
23  government provided this revised calculation to defendant LEONARD
24  on January 20, 2010; the revised calculation is marked as Exhibit
25  12 (and attached hereto as Attachment 1).[2]  At the restitution

26

27    [2]    The government filed Exhibits 1 through 10 with its
   initial briefing (Docket Entry 903).  At the hearing, the

28

4402674.2

1   hearing, the Court also set a briefing schedule on the issue of

2   restitution.  Defendant LEONARD's brief was due on March 1, 2010.

3   The government's brief was due on March 5, 2010.

## III

### **ARGUMENT**

**A.   The Government Has Established That Defendant LEONARD's
      Activities Caused A $2.915 Million Tax Loss**

8       The plea agreement allowed the parties to argue to the Court

9   the amount of restitution to be imposed in this matter.

10  Paragraph 9 of the plea agreement states in full:

            Defendant agrees to make full restitution for the
        losses caused by defendant's activities. The Offices
        currently believe that the applicable amount of
        restitution is $3,000,000, but recognize and agree that
        this amount could change based on facts that come to
        the attention of the parties prior to sentencing.
        Defendant further agrees that defendant will not seek
        the discharge of any restitution obligation, in whole
        or in part, in any present or future bankruptcy
        proceeding.

        The government believes that the applicable amount of

    restitution is $2,915.427.16. This restitution amount is

    supported by the exhibits submitted with its initial briefing on

    this matter (Docket Entry 903), later amended by Government's

    Exhibit 12.[3]  Conservatively, as set forth in the government's

government marked an additional exhibit as Exhibit 11.
Therefore, the government began marking its exhibits attached to
the instant pleading at Exhibit 12.

    [3]      At the Court's direction, the government recalculated
the restitution amount to exclude $112,000 in income attributed
to defendant LEONARD.  The revised calculation was provided to
defendant LEONARD and is attached hereto as Attachment 1, Exhibit
12.  The recalculation reduced the conspiracy tax loss from
$2,945,186.02 to $2,915,427.16.

1  exhibits, the Genesis Funds that were distributed to the
2  defendants were $10,610,168.13.[4] See Attachment 1, Government's
3  Exhibit 12.  This amount does not include distributions to
4  Genesis clients.  To be conservative, the government has
5  subtracted the alleged capital contributions of all defendants
6  except defendant LIPTON.  At a conservative capital gains tax
7  rate of 25%, the amount of tax loss would be $1,628,181.00, not
8  including interest.[5]  Id.  With interest, the total loss rises
9  to $2.915 million.  Id.  This amount includes $319,001, the amount
10  of federal income taxes that defendant Leonard evaded on his
11  $1,655,401.69 in Genesis Fund income.  Id.

12     In determining the amount of Genesis Funds received by
13  defendant Leonard and each co-conspirator, the government relied
14  on numerous bank records it received during the course of its

16  [4]    The government had originally calculated the total
17  unreported income of the co-defendants to be $12,637,718.88.
   This figure included $1.3 million in income that George "Bo"
18  Boeck received form the Genesis Fund. Because the government's
   restitution was capped at $3,000,000 under the plea agreement,
19  the government removed Boeck's income from the calculation
   because there was a question as to whether Mr. Boeck was a U.S.
20  citizen.  After reviewing the calculations with Mr. Ristuccia,
   the government removed an additional $615,011.99 in income it
21  attributed to the conspiracy because there was a chance that the
22  income was double-counted.

23  [5]    Some co-conspirators did not file tax returns, while
24  others omitted their Genesis Fund income from returns filed with
   the IRS.  Still others reported some, but not all Genesis Fund
25  income. Finally, some of those who reported Genesis Fund income
   reported it as ordinary income while others reported the monies
26  as capital gains.  The government has calculated all co-
   conspirator taxes at the capital gains rate.  The capital gains
27  rate is lower than the applicable marginal individual income tax
28  rates, thus crediting defendants an additional benefit.

8

4402674.2

1 investigation, including certified bank records received in
2 response to a letter rogatory; supporting Genesis Fund
3 documentation where available; and statements by various co-
4 conspirators.  Based on this evidence, the government has proven
5 by a preponderance that the tax loss as a result of defendant
6 LEONARD's criminal conduct is at least $2.915 million, and he
7 should be ordered to pay restitution to the IRS of $2,915,427.16.

8 **B.   Defendant LEONARD Has Offered This Court No Reason to Reject**
   **The Government's Restitution Calculation.**
9

10    Defendant LEONARD argues that the government's restitution
   calculation should be rejected because (I) the government has not
11 met its burden of proof because Revenue Agent Pugh's methodology
12 is faulty; (ii) defendant LEONARD has not been able to discuss
13 the government's calculations with his co-conspirators; and (iii)
14 the government erred in including income diverted to defendant
15 LEONARD's family members in his taxable income.  Defendant
16 LEONARD's arguments should be rejected as more fully explained
17 below.

18       **1.   The government has proven by a preponderance the tax**
19          **loss from Genesis Fund income received by defendant**
           **LEONARD**
20
   The crux of defendant LEONARD's criticism of the
21 government's evidence is that it was unable to obtain the checks
22 and deposit items related to the Abetos del Bosque Lluvioso, S.A.
23 ("Abetos") account at Banco Interfin, Costa Rica.  Defendant
24 LEONARD contends that without additional information (such as
25 deposit slips and/or cancelled checks), the government cannot
26 attribute the $1.478 million dollars that was deposited into this
27 account as income to him.
28

9                                    4402674.2

1    Defendant LEONARD ignores his own plea agreement and the
2  exhibits he examined with Revenue Agent Pugh with at the
3  restitution hearing.  The deposits into the Abetos account were
4  considered income to defendant LEONARD based upon his own
5  admissions.  See Attachment 2, Excerpts of Revenue Agent Pugh's
6  Testimony ("Pugh Testimony") at 23, 24; Leonard Plea Agreement ¶¶
7  21, 27c.  Specifically, defendant LEONARD admitted that, in 1999,
8  he caused a Costa Rican lawyer to create Abetos and related bank
9  accounts and obtained a credit card supported by those accounts
10 for the purpose of receiving Genesis Fund distributions.[6]  See
11 Plea Agreement for Defendant Richard B. Leonard, Appendix A ¶ 21.
12 During the course of the investigation, the government obtained,
13 via letter rogatory, certified bank records relating to Abetos.
14 These certified bank records show recurring, high-dollar amount
15 deposits into the account that defendant LEONARD admittedly
16 established for the purpose of receiving Genesis Fund
17 distributions.[7]  Moreover, as a retired individual, defendant

18

19    [6]Defendant TERESA R. VOGT ("defendant VOGT"), the primary
20 administrator of the Genesis Fund, confirmed in her Plea
   Agreement that Genesis Fund distribution checks were issued for
21 defendant LEONARD to his Costa Rican corporation Abetos. See Plea
   Agreement of Teresa R. Vogt, Appendix A, ¶ 9.
22

23    [7]The Court should reject defendant LEONARD's contention
   that, because the bank records are in Spanish and Agent Pugh does
24 not speak Spanish, the government has somehow not met its burden
   of proving that defendant LEONARD received Genesis Fund income
25 through his Abetos account.  Comprehending much of the bank
   records at issue involves little more than inferring that
26 "deposito" means "deposit."  Moreover, the other evidence
   discussed above corroborates the government's understanding of
27 these Abetos bank records.  Consequently, this argument should be
28 rejected by the Court.  Nonetheless, the government has provided

10

1  LEONARD has no other known source of income.  Attachment 2, Pugh
2  Testimony at 97.

3      Indeed, when interviewed by the Office of Probation,
4  defendant LEONARD, through counsel, admitted that the Leonards'
5  shares in the Genesis Fund were owned by a corporation called
6  Abetos del Lluvioso and that "Leonard built a house on property
7  owned by the corporation."  PSR ¶ 123 and n.9.  The name of the
8  corporation that owned the property was CMT 26 and 27.  Id.

9      In addition to the certified bank records, Genesis Fund
10 records also support the government's calculations of defendant
11 LEONARD's Genesis Fund income.  For instance, at the restitution
12 hearing, defendant LEONARD examined Revenue Agent Pugh regarding
13 a Participant Account Monthly Activity Report for Period Ending
14 6/30/00 ("Genesis Fund Monthly Activity Report").  Defendant's
15 Restitution Exhibit A-2 (attached hereto as Attachment 3, page
16 9). Revenue Agent Pugh testified that this report shows the
17 monthly activity for defendant LEONARD's Genesis Fund account
18 through June 2000.  Attachment 2, Pugh Testimony at 31.   A
19 comparison between the Genesis Fund Monthly Activity Report and
20 the Abetos Bank Summary demonstrates that deposits categorized by
21 Revenue Agent Pugh as income were, in fact, Genesis Fund
22 distributions:

23
24
25
26
_____

27 defendant LEONARD'S counsel with a copy of the translation of the
   document for his review.
28

11                                          4402674.2

| Genesis Fund Program Withdrawals | | Deposits to Abetos Acct Banco Interfin | |
|---|---|---|---|
| 08/31/1999 | $52,000 | 08/30/1999 | $50,000 |
| 09/30/1999 | $52,000 | 09/29/1999 | $50,000 |
| 11/30/1999 | $52,000 | 11/24/1999 | $50,000 |
| 12/31/1999 | $52,000 | 12/23/1999 | $50,000 |
| 01/31/2000 | $52,000 | 01/27/2000 | $50,000 |
| 03/31/2000 | $102,000 | 03/28/2000 | $100,000 |
| 04/30/2000 | $102,000 | 04/27/2000 | $100,000 |
| 05/31/2000 | $102,000 | 05/12/2000 | $100,000 |
| 06/30/2000 | $102,000 | 06/16/2000 | $100,000 |

See Attachment 3, Defendant's Restitution Exhibit A-2 at pages 3-9, Genesis Fund Monthly Activity Report bates-stamped 00033, and Banco Interfin Bank Summary bates-stamped 404-409. These items were included as income by Revenue Agent Pugh in her calculation of Defendant LEONARD's taxable income. Attachment 4, Government's Exhibit 13.

Indeed, according to the Genesis Fund Monthly Activity Report, defendant LEONARD received over $1.039 million in distributions from May 1997 to June 2000. See Attachment 3, page 9. This directly contradicts defendant LEONARD's claim that he received only $144,000 in taxable income from the Genesis Fund.

Admissions by other co-conspirators validate the methodology Revenue Agent Pugh used to determine that the recurring, high-dollar amount deposits to the Abetos account were in fact Genesis Fund distributions to defendant LEONARD. For instance, defendant PRESTON admitted that he received $936,692.91 in Genesis Fund

4402674.2

1  distributions.  See Docket Entry 921, Joint Stipulation of
2  Parties Re: Restitution, Proposed Order, and Motion to Vacate
3  Hearing.  Similar to the government's calculation of defendant
4  LEONARD's Genesis Fund income, the Genesis Fund income attributed
5  to defendant PRESTON includes recurring, high-dollar amount
6  deposits to Estrellas Plateadas, S.A.   Attachment 5, Defendant's
7  Restitution Exhibit B.  Estrellas Plateadas, S.A. is the Costa
8  Rican corporation defendant PRESTON caused to be established for
9  the purpose of receiving his Genesis Fund distributions.  See
10 Plea Agreement of Teresa R. Vogt, Appendix A, ¶ 9.

11     Additionally, co-conspirator Michael Putnam stated in his
12 Plea Agreement that he too caused the creation of a Costa Rican
13 corporation and related bank account.  See Plea Agreement for
14 Defendant Michael L. Putnam, Exhibit A, ¶ 25, United States v.
15 Putnam, No. 05-CR-317.  His corporation was named Las Vias de
16 Puerto Viejo.  Id.  Co-conspirator Putnam admitted that he
17 received at least $1.5 million in distributions from the Genesis
18 fund and that he owed at least $286,600 in taxes to the United
19 States government.[8] Id. at ¶¶ 33,40.

21     [8]The government's calculation of Genesis Fund income
   received by defendant LEONARD includes two distributions to an
22 entity by the name of CTM Veintiseis.  One distribution for
   $30,000 in 2000 and another distribution for $14,432.18 in 2001.
23 The government presented testimony by Revenue Agent Pugh that
   this was a nominee entity attributed to defendant LEONARD and
24 that he used this entity to buy property. Attachment 2, Pugh
   Testimony at 50-51. See also PSR ¶123n.9 ("The Leonards had a
25 house built on properties owned by corporations called CMT 26 and
26 27").  These two distributions were from Harrow Management, S.A.,
   an entity defendant VOGT admitted was used to make Genesis Fund
27 distributions. See Plea Agreement of Teresa R. Vogt, Appendix A,
   ¶ 7.
28

13                                        4402674.2

The government's calculation of defendant LEONARD's taxable income from his Genesis Fund distributions is well-supported. Defendant LEONARD has produced no evidence to suggest that there was a non-taxable source of income for the $1.4 million that was deposited into the Abetos account at Banco Interfin.

## 2. The government has proven the tax loss attributable to each of defendant LEONARD's co-conspirators.

In determining the appropriate amount of restitution, this Court should include, not only the tax loss resulting from the unreported Genesis Fund income defendant LEONARD received, but also the tax loss resulting from the unreported Genesis Fund income received by defendant LEONARD's co-conspirators. This is because the appropriate measure of the loss from a conspiracy includes the amount of damages caused by the entire scheme. See United States v. Kubick, 205 F.3d 1117, 1128-29 (9th Cir. 1999) (construing the scope of restitution where defendant was convicted of conspiracy to commit bankruptcy fraud; accord United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004); United States v. Grice, 319 F.3d 1174, 1177-78 (9th Cir. 2003); United States v. Reed, 80 F.3d 1419, 1423 (9th Cir. 1996) (observing that 1990 amendment to Victim Witness Protection Act ("VWPA") provides that courts can order restitution for damage resulting from any conduct that is part of the conspiracy).

Similar to its calculations regarding defendant LEONARD's unreported Genesis Fund distributions, the government has calculated the tax loss (including interest) for co-defendants PRESTON, NURICK, HINDERS, JOHNSON, and LIPTON, and co-conspirator Putnam. See Attachment 1, Government's Exhibit 12. The total

14

1 | tax loss is $2,195,427.16.

2 |     Defendant LEONARD contends that the Court should not order
3 | restitution for taxes owed by his co-conspirators because
4 | defendant LEONARD has had insufficient opportunity to assess the
5 | accuracy of the IRS's tax assessments against these other
6 | individuals.  The Court should reject this argument for the
7 | following reasons.

8 |     First, two of defendant LEONARD's co-conspirators have
9 | agreed to the government's calculations with regard to their
10 | Genesis Fund income and resulting tax loss.  This includes
11 | defendant PRESTON who admitted that he received $936,692.91 in
12 | Genesis Fund distributions.  See Docket No. 921, Joint
13 | Stipulation of Parties Re: Restitution, Proposed Order, and
14 | Motion to Vacate Hearing.  Co-conspirator Michael Putnam also
15 | admitted that he received at least $1.5 million in Genesis Fund
16 | distributions.  See Plea Agreement for Defendant Michael L.
17 | Putnam, Exhibit A, ¶ 33, United States v. Putnam, No. 05-CR-317.
18 | In calculating the tax loss for restitution purposes, the
19 | government attributed $1.543 million of Genesis Fund income to
20 | co-conspirator Putnam. Attachment 1, Exhibit 12.  Two of
21 | defendants co-conspirators have spoken; both agree with the
22 | government's calculation of their tax due and owing.

23 |     Second, defendant LEONARD's criticism of the government's
24 | methodology does not apply to defendants JOHNSON, NURICK, and
25 | HINDERS.  The government was able to obtain the deposit items for
26 | most of the income attributed to defendants JOHNSON, HINDERS, and
27 | NURICK.  Each of these defendants used domestic bank accounts to

28 |

4402674.2

1  receive a substantial portion of their Genesis Fund income.
2  Attachment 2, Pugh Testimony at 75-77, and Attachment 5,
3  Defendant's Restitution Exhibit B (detailing the items attributed
4  to each defendant as income).

5      As detailed in Defendant's Restitution Exhibit B (attachment
6  5), defendant JOHNSON's Genesis Fund distributions were sent to
7  accounts at Wells Fargo Bank and Bank of America.  See also,
8  Attachment 2, Pugh Testimony at 78.  Defendant LEONARD was
9  provided with copies of all the checks supporting the
10 government's calculation of income and tax due and owing for
11 defendant JOHNSON.  Likewise, as evidenced in Defendant's
12 Restitution Exhibit B (Attachment 5), defendant NURICK deposited
13 significant income into Wells Fargo Bank, Clovis Community Bank
14 and Downey's Savings and Loan – all domestic banks.  Defendant
15 HINDERS deposited Genesis Fund income into Wells Fargo Bank, U.S.
16 Bank, and Regency Christian Citywide Bank.  Attachment 2, Pugh
17 Testimony at 75-76.[9]  Defendant LEONARD has offered no reason why
18 the government's calculation of taxable income for defendants
19 JOHNSON, NURICK and HINDERS (which relies predominantly on
20 domestic bank records) is somehow inadequate.

21     In determining the Genesis Fund income attributed to
22 defendant LIPTON, the government relied on the list of nominee
23 accounts provided by defendant VOGT in her plea agreement.  See
24 Plea Agreement of Teresa R. Vogt, Appendix A, ¶¶ 8-11.  As she

25

26     [9]All three of these defendants also used offshore bank
    accounts in Costa Rica and any information obtained from Banco
27 Interfin would be the same Bank Summary Statement that the
    government received with respect to defendant LEONARD.
28

4402674.2

1  stated in her factual basis, defendant LIPTON used the following
2  nominee accounts:

| |
| --- |
| JSL Trust |
| BRL Trust |
| Genuine Management Trust |
| Internet Control Trust |
| Sorrell Property Trust |
| Pal Marketing Trust |
| THE Account Trust |
| Distribuidora Antioquia de Occidente S.A. |
| Latham Enterprises |
| Larix International |
| Venture Sports Corporation |
| Village Hall Investments |
| The Antique Gallery |

15  Id. at ¶¶ 8,9 and 11.

16       Defendant VOGT further stated that while she was
17  administrator of the Genesis Fund, defendant LIPTON directed her
18  to make payments from the Genesis Fund for his personal expenses
19  such as rent, travel, furniture, clothing, and health insurance.
20  These expenses included expenses on an American Express account
21  held in the name of Anthony Jones.  Id. at ¶13.  Defendant VOGT
22  links defendant LIPTON to these nominee accounts and the bank
23  records support the income attributed to defendant LIPTON.

24       In brief, two of the defendants have agreed with the
25  government's calculations, and these calculations were made using
26  the same methodology used to calculate the tax loss for each co-
27  conspirator.  The calculations of tax loss for three other
28

17                                    4402674.2

1  defendants is readily provable because domestic banks were used.
2  The calculation of defendant LIPTON's tax loss is substantiated
3  by defendant VOGT and the same methodology used to calculate
4  defendant LEONARD's tax loss.   Consequently, the government has
5  proven by a preponderance the tax loss associated with each of
6  the co-conspirators.

### 3. The Court should reject defendant LEONARD's argument that he cannot assess the accuracy of the government's calculations

9  Defendant LEONARD complains that without access to Arnoldo
10 Andre Tinoco or defendant VOGT he cannot fully assess the
11 accuracy of the government's calculations with respect to the
12 Genesis Fund distributions made to Abetos.  Relatedly, defendant
13 LEONARD complains that without access to his other co-defendants,
14 he has no meaningful opportunity to rebut the government
15 calculations with regard to these defendants.  The Court should
16 reject these arguments.

17 It cannot be unexpected that one's co-conspirators will
18 refuse to potentially incriminate themselves in order to provide
19 evidence at the request of another conspirator.  Moreover, there
20 is no guarantee that any or all of defendant LEONARD's co-
21 defendants would testify in their own defense at trial.  The
22 silence of some of his co-defendants does not prevent defendant
23 LEONARD from challenging the government's restitution
24 calculation.  Defendant LEONARD was afforded the opportunity to
25 discuss the calculations with Revenue Agent Pugh and Special
26 Agent Molt on numerous occasions prior to the hearing.  Defendant
27 LEONARD was also provided with the summary of the income items,

28

18                                          4402674.2

1 and where they existed, the cancelled checks and other deposit
2 items.

3 Defendant LEONARD joined this conspiracy at his own peril.
4 Defendant LEONARD received $1,655,401.69 in income from the
5 Genesis Fund.  As admitted in his guilty plea to Count 68, he
6 conspired with his do-defendants to create "undisclosed" accounts
7 to hide their Genesis fund distribution from the IRS.  LEONARD
8 joined this conspiracy willingly and benefitted from it greatly.

9 Accordingly, defendant LEONARD cannot complain that he has
10 had insufficient information or time to contest the government's
11 restitution calculation.  Defendant LEONARD should be ordered to
12 pay restitution in the amount of $2,915,427.16 as calculated by
13 the government.

### 4. The monies provided to defendant LEONARD's family members are taxable income to defendant LEONARD.

Defendant LEONARD received Genesis Fund distributions that
he directed to be paid to various family members, including Paul
and Lisa Leonard, Johanna Leonard, Teresa Leonard, and James
Leonard.  See Attachment 1, Government's Exhibit 12 at pg. 2;
Attachment 4 (detailing Revenue Agent Pugh's calculation of
defendant LEONARD's taxable income).  This income was properly
attributed to defendant LEONARD.  In discussing principles of
income tax, Revenue Agent Pugh explained that tax is due on
income upon receipt or the use of the income for one's personal
benefit.  See Attachment 2, Pugh Testimony at 99.  Revenue Agent
Pugh further explained that when an individual has the right to
some money, control over it, and the ability to assign it, this
money is considered to be that individual's income as if he or

19

4402674.2

1   she had received it. (Id.)  Turning to the facts of this case,
2   Revenue Agent Pugh testified that by directing various Genesis
3   Fund distributions to be paid directly to his family members,
4   defendant LEONARD had constructive receipt of these distributions
5   and merely assigned these funds to other individuals.  As a
6   consequence, Revenue Agent Pugh testified that the items made
7   payable to defendant LEONARD's family members are considered,
8   under the Internal Revenue Code, to be defendant LEONARD's income
9   and he is responsible for the payment of taxes on these
10  distributions.  Id. at 100.  Consequently, the government
11  appropriately included these distributions in its tax loss
12  calculations.

13      Defendant LEONARD contends that no restitution is owed by
14  him, because upon payment to family members, the obligation to
15  pay tax shifted to them.  Defendant LEONARD misunderstands the
16  law.  As explained by Revenue Agent Pugh, the tax law prevents
17  individuals from moving their income to another person, who
18  presumably is in a lower tax bracket, in order to avoid paying
19  certain taxes.  Id. at 102.  Whether defendant LEONARD's family
20  members paid income tax on the money he directed to them is
21  immaterial.  If they did so in error, they may be entitled to a
22  refund.  What matters is that defendant LEONARD exercised control
23  over the funds he directed to be paid to his various family
24  members, and consequently these distributions, under the internal
25  revenue code, are considered his income.

26      Accordingly, defendant LEONARD should be ordered to pay
27  restitution on the tax due (and interest) for the $122,245.51 in

28

20                              4402674.2

1 | Genesis Fund income he diverted to his family members.
2 | Attachments 1 and 4, Government's Exhibits 12 and 13.
3 |
4 | **IV**
5 | **CONCLUSION**
6 | For all the foregoing reasons, the government respectfully
7 | requests the Court to order defendant LEONARD to make restitution
8 | to the Internal Revenue Service in the amount of $2,915,427.16
9 | for the criminal conspiracy to which he pleaded guilty.
10 |
11 | Date: March 5, 2010          Respectfully Submitted,
12 |
13 |                             JOHN A. DiCICCO
14 |                             Acting Assistant Attorney General
15 |
16 |                             /s/Ellen Quattrucci
17 |                             LORI A. HENDRICKSON
     |                             ELLEN M. QUATTRUCCI
18 |                             DANNY N. ROETZEL
     |                             Trial Attorneys
19 |                             Tax Division
20 |                             Attorneys for Plaintiff
     |                             United States of America
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

4402674.2