UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 05-316-DSF | Date | 4/26/10 |
|---|---|---|---|

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|
| Interpreter | N/A |

| Debra Plato | Not Present | Ellen Quattrucci - DOJ (Not Present) |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 4) Richard Leonard | NOT | | SR | 4) Stephen G. Frye | NOT | | X |

**Proceedings:**   (IN CHAMBERS)  Order re Restitution

On December 1, 2008, Defendant Richard Leonard pleaded guilty to conspiracy to conceal income from the Internal Revenue Service. On February 23, 2009, the Court sentenced Leonard to time served plus three years of supervised release, with the amount of restitution owed to be determined. On January 11, 2010, the Court held a restitution hearing where evidence was taken from two agents of the IRS. The Court now finds that the government has established restitution due in the amount of $2,915,427.16.

A member of a conspiracy is responsible for restitution on the total loss caused by that conspiracy. See United States v. Grice, 319 F.3d 1174, 1177-78 (9th Cir. 2003). In determining that amount at the sentencing stage, the court can consider hearsay as long as that hearsay has "some minimal indicia of reliability." United States v. Petty, 982 F.2d 1365, 1370 (9th Cir. 1993). The government must prove the amount of restitution owed by a preponderance of the evidence. 18 U.S.C. § 3664(e).

In this case, the government used the bank deposit method of calculating unreported income of Leonard and several other defendants. In utilizing the bank deposit method, the government has "an overall burden to prove that it has done the best it can to discover, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

exclude, all non-income items from the reconstructed income." United States v. Stone, 770 F.2d 842, 845 (9th Cir. 1985) (quoting United States v. Morse, 491 F.2d 149, 154 (1st Cir. 1974)). "The critical question is whether the government's investigation has provided sufficient evidence to support an inference that an unexplained excess in bank deposits is attributable to taxable income." Id. at 844-45. The government is responsible for investigating "explanations of the defendant reasonably susceptible of being checked." See Holland v. United States, 348 U.S. 121, 138 (1955). "But where relevant leads are not forthcoming, the Government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant." Id. "The adequacy of a bank deposits investigation necessarily turns on its own circumstances." Stone, 770 F.2d at 845 (citation omitted).

One of Leonard's primary defenses to the government's restitution calculations is that he did not have access to his co-defendants so he could not effectively counter those calculations. This argument fails. One of the inherent risks of engaging in a criminal conspiracy is that you will not be able to rely on your co-conspirators for your defense. If Leonard's position were accepted, it is difficult to see how the government could prosecute conspiracy cases because every defendant could claim that he could present a fuller defense with access to his (presumably silent) co-conspirators. Leonard never requested that the Court order the government to grant use immunity to his co-defendants, nor is it likely that Leonard would be successful if he made such a motion. See United States v. Straub, 538 F.3d 1147, 1156-62, 1166 (9th Cir. 2008) ("The Fifth Amendment does not create a general right for a defendant to demand use immunity for a co-defendant, and the courts must be extremely hesitant to intrude on the Executive's discretion to decide whom to prosecute.") Further, two co-conspirators have admitted to the amount of unreported income they received from the Genesis Fund scheme. Leonard provides no argument as to how he could elicit evidence from them that would persuasively counter their in-court admissions. Three other conspirators maintained United States banks with extensive bank records showing a large percentage of the money that these conspirators received from the Genesis Fund. Leonard only states that he "cannot assess the accuracy of the government's claims" without talking to his co-conspirators, (see Second Suppl. Mem. at 8), but does not say what he hopes to prove that he cannot show through the underlying bank records.

After reviewing the evidence and arguments presented and having heard the live testimony at the restitution hearing, the Court finds the following facts:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

1. Leonard admitted that the following accounts were established in the course of the conspiracy for the purpose of receiving distributions from the Genesis Fund and for evading taxation of those distributions: the account in the name of Ortega Management Trust at Paine Webber UBS and the account in the name of Abetos del Bosque Lluvioso, S.A. at Banco Elca.

2. The government established that Leonard received $1,489,262.76 in unreported Genesis Fund distributions into accounts controlled by Leonard in the relevant time period. The government properly attributed deposits into the Abetos del Bosque Lluvioso, S.A. account as Genesis Fund distributions given Leonard's admission that the account was established for the purpose of receiving Genesis Fund income and for the purpose of evading income taxes. Leonard admitted this in the signed plea agreement, (see Plea Agreement, App. A, ¶ 21), and orally confirmed these facts at his change of plea hearing. The government established that deposits into the account held in the name of CTM Veintiseis were Genesis Fund distributions by the reasoning and evidence cited at footnote 13 of its Response to Leonard's Second Supplemental Memorandum.

3. The Court finds that the government's investigation was adequate in light of the circumstances. Leonard admitted that accounts in the name of Ortega Management Trust and Abetos del Bosque Lluvioso, S.A. were established to receive Genesis Fund distributions for the purposes of evading income tax. This creates a reasonable inference that money deposits into those accounts were unreported Genesis Fund distributions. Leonard was retired during the relevant period and had no other known source of income beyond the Genesis Fund. There is no indication that the government had any reason to believe that the money deposited into these accounts was anything other than unreported Genesis Fund distributions. In his papers, Leonard notes that Costa Rican lawyer Arnoldo Tinoco Andre had access to the accounts, but he provides no concrete suggestion on how Tinoco could have been responsible for the deposited funds.

4. Defendant Victor Preston admitted unreported distributions related to the conspiracy of $936,692.91. Co-conspirator Michael Putnam admitted unreported distributions related to the conspiracy of $1,543,000. The Court has been given no reason to doubt these amounts and accepts the admissions as true.

5. Defendants David Johnson, William Nurick, and Marlyn Hinders used United States

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

bank accounts to receive Genesis Fund distributions.  The government used detailed records to establish Genesis Fund distributions deposited into these accounts. These defendants also maintained Costa Rican accounts and the government confirmed Genesis Fund distributions into those accounts by a similar method as that used for Leonard's Costa Rican accounts.  Leonard provides no evidence to contradict the government's calculations.  The Court finds that the government established unreported distributions related to the conspiracy as follows: Johnson: $2,464,593.41; Nurick: $1,360,009.77; Hinders: $925,061.52.

6. The government has established that Defendant John Lipton received $1,724,703.27 in unreported distributions from the conspiracy in the relevant period.  In establishing this amount, the government relies on hearsay evidence provided by co-conspirator Teresa Vogt.  Even though this information was provided in the context of a criminal investigation, the Court finds that it has sufficient reliability to be used in the sentencing context because her testimony – mostly information about Genesis Fund distributions – is corroborated by the United States bank records of Defendants Johnson, Nurick, and Hinders.  Her testimony is also corroborated by the Costa Rican bank records of Leonard that show matching deposits corresponding to the distribution information provided by Vogt.

7. There is no evidence to corroborate John Lipton's alleged capital contributions to the Genesis Fund.  Therefore, these alleged capital contributions properly were not deducted from the Genesis Fund distributions he received.

8. Leonard's children received $122,245.51 from the Genesis Fund.  Leonard does not deny that the payments to his children were Genesis Fund distributions and does not deny that he had control over the distribution of these funds and directed the funds to be paid to his children instead of himself.  Because Leonard had control over the funds they are properly considered to be his income.

9. The total amount of unreported income attributable to the conspiracy is $10,610,168.13, less capital contributions by all conspirators other than John Lipton.

10. The total tax loss owed as restitution, as conservatively estimated by the government based on a capital gains tax rate of 25%, is $1,628,181.00.  When interest is included, the

CR-11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

total tax loss is $2,915,427.16.