LAW OFFICE OF STEPHEN G. FRYE
Stephen G. Frye (CSBN 196728)
205 South Broadway, Suite 705
Los Angeles, California 90012
Telephone: (213) 621-1600
Facsimile: (213) 621-1616
Email:  sgf@sgfryelaw.com

Attorney for RICHARD LEONARD

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| United States of America, | ) CR 05-316-DSF |
|---|---|
| Plaintiff. | ) **MOTION OF DEFENDANT RICHARD** ) **LEONARD TO RECONSIDER THE** |
| vs. | ) **COURT'S RESTITUTION ORDER AND** ) **TO CORRECT SENTENCE** |
| **RICHARD LEONARD** | ) |
| Defendant. | ) Date:  N/A ) Time:  N/A ) Place: N/A |

**MOTION**

Defendant Richard B. Leonard ("Mr. Leonard") hereby moves for reconsideration of the Court's order of restitution entered on April 26, 2010.  Mr. Leonard moves for reconsideration pursuant to Federal Rule of Criminal Procedure 35(a), which permits parties to move for reconsideration of sentence and allows courts to correct sentencing orders within 14 days of entry.  See United States v. Barragan-Mendoza, 174 F.3d 1024, 1026 (9th Cir. 1999).  The filing of a motion to reconsider and

1  correct sentence suspends the 10 day deadline within which
2  parties must file a notice of appeal.  Id.

3     By relying solely on Revenue Agent Jean Pugh's testimony at
4  the restitution hearing, despite previously agreeing to grant
5  immunity to Coast Rican Attorney Arnoldo Tinoco Andre ("Mr.
6  Tinoco"), the government did not prove that it had done its best
7  to discover, and exclude, all non-income items from the
8  reconstituted income.  Because the government failed its burden
9  at the restitution hearing, the Court should modify the
10 restitution order, imposed as part of sentencing, and decline to
11 order restitution other than that Mr. Leonard conceded that he
12 owes.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**APPLICATION TO RECONSIDER RESTITUTION ORDER AND CORRECT SENTENCE**

**I.**

**FACTS**

17    Throughout the pleadings related to restitution, Mr. Leonard
18 has complained of his lack of access to Mr. Tinoco as a means by
19 which to refute some of the government's attribution of income to
20 Mr. Leonard personally and to attribution of income to other co-
21 conspirators.  (See, e.g., Response of Defendant Richard Leonard
22 to Government's Memorandum Regarding Restitution, docket entry
23 774, at p. 5; Supplemental Sentencing Position Memorandum of
24 Defendant Richard Leonard Regarding Restitution Filed Under Seal,
25 docket entry 777, at pp. 8-10).

26    After considerable briefing, the Court conducted a
27 restitution hearing regarding Mr. Leonard on January 11, 2010.
28 At the outset of that hearing, Mr. Leonard requested a

1  continuance because of his lack of access to Mr. Tinoco.  The
2  Court denied Mr. Leonard's request.  At the hearing, IRS Revenue
3  Agent Pugh testified that she calculated Mr. Leonard's tax
4  liability using a modified bank deposit method.  She testified
5  that she never spoke with Mr. Tinoco or anyone else at Mr.
6  Tinoco's office regarding Mr. Leonard's tax issues.  At the
7  conclusion of the hearing, the Court took the matter under
8  advisement.

9      On April 19, 2010, counsel for Mr. Leonard received notice
10 from the government that the government had promised immunity to
11 Mr. Tinoco by letter dated December 8, 2009 (the "December 2009
12 Immunity Letter").  (See Declaration of Counsel, attached hereto,
13 at ¶ 2).  A copy of the December 2009 Immunity Letter is attached
14 as Exhibit A to the Declaration of Counsel.  Pursuant to the
15 terms of that immunity understanding, the government apparently
16 interviewed Mr. Tinoco on February 17, 2010.  (Id. at ¶ 3).  That
17 interview was memorialized in a Memorandum of Interview (the
18 "February 2010 MOI"), which is attached as Exhibit B to the
19 Declaration of Counsel.  In the interview, which apparently
20 focused primarily on cooperating defendant Michael Putnam, Mr.
21 Tinoco confirmed how he created Costa Rican corporations, foreign
22 trusts, etc., for use by his clients, presumably including Mr.
23 Leonard, to hold and protect assets. (See Exhibit B to
24 Declaration of Counsel at ¶¶ 11-18).

25     Revenue Agent Pugh was not present for the interview of Mr.
26 Tinoco in February 2010.  Apparently, neither Mr. Leonard's tax
27 issues nor the tax issues of other defendants, other than perhaps
28 Mr. Putnam, were discussed.

1   On April 19, 2010, counsel for Mr. Leonard forwarded the
2  December Immunity Letter and the February MOI to Mr. Leonard.
3  (Declaration of Counsel at ¶ 4).  Mr. Leonard and counsel
4  exchanged voice messages during the week, finally speaking by
5  phone on Friday, April 23, 2010.  (Id.).  During that
6  conversation, Mr. Leonard authorized counsel to file a
7  supplemental memorandum alerting the Court to the existence of
8  the December Immunity Letter and the February 2010 MOI.  (Id.).
9   On Monday, April 26, 2010, the Court entered an order
10 setting the restitution amount at $2,915,427.16.  As part of the
11 Order the Court noted that, in assessing Mr. Leonard's tax
12 liability, the United States government had performed the best
13 analysis it could have performed under the circumstances.  Mr.
14 Leonard seeks reconsideration and correction of that Order.

**II.**

**ARGUMENT**

17  Federal Rule of Criminal Procedure 35(a) permits courts to
18 correct a sentence resulting from clear error within 14 days of
19 imposition of sentence.  Former Rule 35(c) only permitted courts
20 to correct a sentence within seven days of sentence imposition.
21 In 2009, however, Rule 35 was modified to permit courts to
22 correct sentences within fourteen days of imposition because "of
23 the increased complexity of the sentencing process."  Fed. R.
24 Crim. P. 35(a), Advisory Committee's Notes to 2009 Amendments.
25 The Ninth Circuit has recognized that parties may move for
26 reconsideration of a sentencing order, and ask courts to correct
27 sentence pursuant to Rule 35.  United States v. Barragan-Mendoza,
28 174 F.3d 1024, 1026 (9th Cir. 1999).

The filing of a motion to reconsider and correct sentence suspends the 10 day deadline within which parties must file a notice of appeal. Id. The district court, however, does not lose jurisdiction even if an appeal is filed prior to expiration of the fourteen day period. Fed. R. App. P. 4(b)(5); see also Fed. R. Crim. P. 35(a), Advisory Committee's Notes to 2009 Amendments. Rule 35 "is intended to allow a district court to modify a sentence only in very limited instances and not merely to 'reconsider' sentencing issues." United States v. Aguirre, 214 F.3d 1122, 1126 (9th Cir. 2000) (quoting Barragan-Mendoza, 174 F.3d at 1028).

In Aguirre, two days after oral imposition of sentence, the district court issued an order reducing defendant's guideline sentence because the court failed to consider that the absence of a local women's prison facility would make family visitation difficult. On appeal, the Ninth Circuit recognized the power of the district courts to correct sentences, but concluded that the failure to consider the unavailability of a local women's prison facility did not constitute clear error under Rule 35. "The original sentence was not based on the availability of local prison housing. Indeed, the defense did not ask for a departure on this basis, but only for a recommendation as to local housing after the district court had already imposed the sentence." Aguirre, 214 F.3d at 1126.

In this case, unlike Aguirre, the failure of the government to produce Mr. Tinoco for the restitution hearing, or to agree to the defense request to continue the restitution hearing, or to even interview Mr. Tinoco regarding Mr. Leonard's restitution

issues prior to the hearing – even though the government had agreed to grant Mr. Tinoco immunity a month before the hearing – deprived Mr. Leonard of the opportunity to meaningfully defend against the government's restitution calculations. Unlike the defendant in Aguirre, throughout his restitution pleadings, Mr. Leonard complained that the absence of Mr. Tinoco deprived Mr. Leonard of the opportunity to meaningfully defend himself and asked the Court to decline to award the restitution amount sought by the government for that reason. Mr. Leonard even requested a continuance of the restitution hearing in hopes of gaining access to Mr. Tinoco.

The government used a modified bank deposit method to calculate Mr. Leonard's reconstituted income for restitution purposes. As such the government bore the "overall burden to prove that it has done the best it can to discover, and exclude, all non-income items from the reconstituted income." United States v. Stone, 770 F.2d 842, 845 (9th Cir. 1985) (quoting United States v. Morse, 491 F.2d 149, 154 (1st Cir. 1974). "The critical question is whether the government's investigation has provided sufficient evidence to support an inference that an unexplained excess in bank deposits is attributable to taxable income." Stone, 770 F.2d at 844-45. "[W]here relevant leads are not forthcoming, the Government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant." Id. "The adequacy of a bank deposits investigation necessarily turns on its own circumstances." Id. at 845.

1       Unlike the typical taxpayer Mr. Leonard relied completely on
2  Mr. Tinoco to create legal entities to protect Mr. Leonard's
3  assets.  In the February 2010 MOI, Mr. Tinoco explained, in basic
4  terms, how this was done.  This explanation is consistent with
5  Mr. Leonard's understanding of what was done on his behalf.  (See
6  Supplemental Sentencing Position Memorandum of Defendant Richard
7  Leonard Regarding Restitution Filed Under Seal, docket entry 777,
8  at pp. 8-10).  In its February 2010 interview, however, the
9  government never followed up with Mr. Tinoco regarding the tax
10 consequences in the United States from the actions taken by Mr.
11 Tinoco on behalf of Mr. Leonard or any of his other clients, the
12 tax liability of many of whom the government is also trying to
13 collect from Mr. Leonard as resitution.  The February 2010 MOI
14 simply notes that Mr. Tinoco advised his clients to "check with
15 their advisors in the United States," although the February 2010
16 MOI does not indicate that Mr. Tinoco was referring to taxes when
17 he so advised his clients.  (See February 2010 MOI at ¶ 31).
18      Because Mr. Tinoco completely controlled whatever income
19 items were attributable to Mr. Leonard, Mr. Leonard, unlike the
20 typical taxpayer, was completely dependent on Mr. Tinoco in
21 assessing whether he had legitimate defenses to some or all of
22 the income items attributed to Mr. Leonard by Revenue Agent
23 Pugh.
24      The failures of the government also deprived the Court of a
25 more meaningful basis on which to impose restitution.  Because
26 the government did not produce Mr. Tinoco for the restitution
27 hearing, or even interview him concerning Mr. Leonard's
28

1  restitution issues, a restitution order that does not account for
2  the government's failures is clearly erroneous.

### III.

### CONCLSION

By relying solely on Revenue Agent Jean Pugh's testimony at the restitution hearing, despite previously agreeing to grant immunity to Coast Rican Attorney Arnoldo Tinoco Andre ("Mr. Tinoco"), the government did not prove that it had done its best to discover, and exclude, all non-income items from the reconstituted income.  Because the government failed its burden at the restitution hearing, the Court should modify the restitution order, imposed as part of sentencing, and decline to order restitution other than that Mr. Leonard conceded that he owes.

```
Dated:  May 5, 2010        Respectfully submitted,
                           LAW OFFICE OF STEPHEN G. FRYE



                           By:_____/s/_____
                                Stephen G. Frye
                           Attorney for RICHARD LEONARD
```