JOHN A. DiCICCO
Acting Assistant Attorney General
Tax Division
Department of Justice
ELLEN M. QUATTRUCCI
Trial Attorney (D.C. BN: 462103)
LORI A. HENDRICKSON
Trial Attorney (Ohio BN: 0067831)
DANNY N. ROETZEL
Trial Attorney (Missouri BN: 34879)
Tax Division, Western Criminal Enforcement Section
    P.O. Box 972
    Washington, D.C. 20044
    Telephone: (202) 514-9370
    Facsimile: (202) 514-9623
    E-mails:  Ellen.M.Quattrucci@usdoj.gov
             Lori.A.Hendrickson@usdoj.gov
             Danny.N.Roetzel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) NO. CR 05-316-DSF |
|---|---|
| Plaintiff, | ) **GOVERNMENT'S RESPONSE TO MOTION OF DEFENDANT RICHARD B. LEONARD TO RECONSIDER THE COURT'S RESTITUTION ORDER AND TO CORRECT SENTENCE** |
| v. | |
| JOHN S. LIPTON, et al., | ) Date: |
| Defendants. | ) Time: |

COMES NOW the United States of America, by and through its counsel of record, Trial Attorneys Lori A. Hendrickson, Ellen M. Quattrucci, and Danny N. Roetzel, Department of Justice, Tax Division, and files its response in opposition to the Motion of defendant RICHARD B. LEONARD to Reconsider the Court's Restitution Order and to Correct Sentence.

4522168.2

The government's position is based on the attached memorandum of points and authorities; the record and file in this case; and any additional evidence and argument that the Court may receive prior to or at any hearing on the motion.

Dated: May 12, 2010          Respectfully Submitted,

                             JOHN A. DiCICCO
                             Acting Assistant Attorney General


                             s/ Lori A. Hendrickson
                             LORI A. HENDRICKSON
                             ELLEN M. QUATTRUCCI
                             DANNY N. ROETZEL
                             Trial Attorneys
                             Tax Division

                             Attorneys for Plaintiff
                             United States of America

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I. BACKGROUND AND SUMMARY ARGUMENT**

On December 1, 2008, defendant RICHARD B. LEONARD ("LEONARD") pleaded guilty to Count 68 of the Indictment, which charges a conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and a one-count information charging attempted tax evasion in violation of 26 U.S.C. § 7201.  In his Plea Agreement, defendant LEONARD agreed to make full restitution for the losses caused by his activities, but did not agree to a specific amount of restitution.  Plea Agreement ¶ 9 (Docket Entry 681).  On February 23, 2009, the Court sentenced defendant LEONARD to "time served," to be followed by three years supervised release, but deferred determination of any restitution to be paid by defendant LEONARD pursuant to 18 U.S.C. § 3664(d)(5).  On April 26, 2010, following a restitution hearing held on January 11, 2010, during which evidence was taken from two agents of the Internal Revenue Service, and after receiving extensive briefing from the parties, the Court entered an order ("the Restitution Order") directing defendant LEONARD to pay restitution in the amount of $2,915,427.16.

Defendant LEONARD now seeks reconsideration of the Restitution Order pursuant to Federal Rule of Criminal Procedure 35(a), which permits a court to correct a sentence that resulted from arithmetical, technical, or other clear error.[1]  The "error"

---

[1] Defendant LEONARD also filed a notice of appeal regarding the Restitution Order. (Docket Entry 966.)  Defendant LEONARD's

defendant LEONARD claims the Court should correct is that "the government did not prove that it had done its best to discover, and exclude, all non-income items from the reconstituted [sic] income." Def's Mot. at 2. Defendant LEONARD's claim of error is nothing more than an attempt to re-litigate an issue that even defendant LEONARD admits in his pleading has been repeatedly briefed and argued to the Court, and which the Court soundly rejected in the Restitution Order. Defendant LEONARD's claim of error does not fall within the narrow scope of errors Rule 35 is intended to correct, and his motion should be summarily denied on that basis alone. Nevertheless, defendant LEONARD's alleged error is also without merit. The Court correctly found in the Restitution Order that the government's investigation was adequate in light of the circumstances of this case, and nothing in defendant LEONARD's instant motion undermines this finding.

## II. LEGAL STANDARD

Rule 35(a) provides in full:

> **Correcting clear error.** Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.

Fed. R. Crim. P. 35(a). The United States Court of Appeals for

---

persistent fight against an order of restitution raises the suspicion that he possesses substantial off-shore assets that he wants to protect from being seized by the government to satisfy any restitution obligations. A defendant would not fight an order of restitution so vociferously if he is essentially penniless, as defendant LEONARD has claimed in the past he is. See Ex Parte Application for Airfare Payment by defendant LEONARD (Docket Entry 855) (asserting that defendant LEONARD could not afford to pay for airfare from Denver, Colorado to Los Angeles, California to attend the restitution hearing).

the Ninth Circuit has stated that "[t]he district court's authority to correct a sentence under Fed. R. Crim. P. 35(c) [Rule 35(a)][2] 'is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence.'" United States v. Portin, 20 F.3d 1028, 1029 (9th Cir. 1994) (per curiam) (quoting Fed. R. Crim. P. 35 advisory committee's notes on 1991 Amendment).  The Ninth Circuit has also clearly stated that the purpose of this rule is "to permit the district court to correct 'obvious' sentencing errors, 'but not to reconsider, to change its mind, or to reopen issues previously resolved under the guidelines, where there is no error.'" United States v. Aguirre, 214 F.3d 1122, 1126 (9th Cir. 2000) (quoting Portin, 20 F.3d at 1030).

### III. ARGUMENT

A. <u>Defendant LEONARD's asserted "error" is merely an improper attempt to re-litigate issues decided by the Court in the Restitution Order</u>

In his motion, defendant LEONARD asserts that the Court's finding that the government performed the best analysis it could have performed under the circumstances in determining defendant LEONARD's income from the Genesis Fund is erroneous.  Defendant LEONARD claims that the government's failure to produce Arnoldo Andre Tinoco, a Costa Rican attorney, for the restitution hearing, or to agree to the defense request for a continuance of the restitution hearing, or to interview Mr. Tinoco regarding

---

[2] Rule 35 was amended by Pub. L. No. 98-473.  This amendment included, among other things, a renumbering of Rule 35(c) to Rule 35(a).

defendant LEONARD's restitution issues deprived defendant LEONARD of the opportunity to meaningfully defend against the government's restitution calculations. Defendant LEONARD states that he continuously argued that the absence of Mr. Tinoco deprived him of the opportunity to defend himself and asked the Court to decline to award the restitution amount sought by the government.

The Court addressed this argument by defendant LEONARD in its restitution order and soundly rejected it. Specifically, the Court stated:

> One of Leonard's primary defenses to the government's restitution calculations is that he did not have access to his co-defendants so he could not effectively counter those calculations. This argument fails. One of the inherent risks of engaging in a criminal conspiracy is that you will not be able to rely on your co-conspirators for your defense.

Restitution Order at 2. Defendant LEONARD's own pleading demonstrates that the claimed error has been litigated extensively in the restitution pleadings. This makes clear that defendant LEONARD's current motion is nothing more than an attempt to re-litigate an issue already decided by the Court and not to correct the sort of error Rule 35(a) was designed to address. Rule 35(a) does not permit a court to reconsider its sentence as defendant LEONARD urges the Court to do here. Accordingly, defendant LEONARD's Motion should be denied.

B. <u>Defendant LEONARD's claim that the government failed to meets its burden is utterly without merit.</u>

While defendant LEONARD's motion should be denied out of

hand because it is merely an improper attempt to use Rule 35 to re-litigate an issue already decided by the Court, defendant LEONARD's motion is also meritless because nothing defendant LEONARD claims in his motion undermines the Court's finding that the government met its burden in proving the unreported income by defendant LEONARD and his co-defendants.

As the Court noted in the Restitution Order, the government used the bank deposits method of proof to calculate the unreported income. Therefore, the government has "an overall burden to prove that it has done the best it can to discover, and exclude, all non-income items from the reconstructed income." United States v. Stone, 770 F.2d 842, 844 (9th Cir. 1985) (quoting United States v. Morse, 491 F.2d 149, 154 (1st Cir. 1974)). The government is responsible for investigating "explanations of the defendant reasonably susceptible of being checked." Holland v. United States, 348 U.S. 121, 138 (1955). "But where relevant leads are not forthcoming, the Government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant." Id. As noted by the Ninth Circuit, "[t]he adequacy of a bank deposits investigation necessarily turns on its own circumstances." Stone, 770 F.2d at 845 (citation omitted).

Defendant LEONARD now claims that the government has somehow failed to meet its burden in proving the unreported taxable income to defendant LEONARD and his co-defendants because the government promised immunity to Mr. Tinoco by letter dated December 8, 2009, interviewed Mr. Tinoco on February 17, 2010 but

did not ask him questions regarding defendant LEONARD's Genesis Fund distributions, and failed to produce Mr. Tinoco for the restitution hearing.  Contrary to defendant LEONARD's contentions, the government did meet its burden in proving that it had done its best to discover, and exclude, all non-income items from the reconstructed income, and nothing in defendant LEONARD's instant motion regarding Mr. Tinoco demonstrates otherwise.[3]

Most importantly, Mr. Tinoco cited attorney-client privilege with respect to issues involving defendant LEONARD and his co-defendants.  Consequently, during the interview, the government was precluded from asking Mr. Tinoco questions regarding Genesis Fund income received by defendant LEONARD or the other co-

---

[3] The government notes that defendant LEONARD makes several statements in his motion that are at odds with his Plea Agreement.  For instance, defendant LEONARD states in the motion that Mr. Tinoco confirmed in his interview how he created Costa Rican corporations, foreign trusts, and associated credit cards for use by his clients, "presumably including Mr. Leonard," to hold and protect assets.  Def's Mot. at 3.  However, no presumption is necessary in this instance as defendant LEONARD admitted in his Plea Agreement that Mr. Tinoco created Costa Rican corporations and related bank accounts for defendant LEONARD.  Plea Agreement Appendix A ¶ 21.  Similarly, defendant LEONARD states that "[u]nlike the typical taxpayer Mr. Leonard relied completely on Mr. Tinoco to create legal entities to protect Mr. Leonard's assets."  Def. Mot. at 7.  This seemingly benign description of defendant LEONARD's use of Mr. Tinoco's services is contrary to defendant LEONARD's Plea Agreement.  In his Plea Agreement, defendant LEONARD admitted that the Costa Rican corporations, related bank accounts, and associated credit cards were established "for the purpose of receiving Genesis Fund income in order to evade reporting income to the IRS."  Plea Agreement Appendix A ¶ 21.  The government concedes defendant LEONARD's claim that he is not like a typical taxpayer – a typical taxpayer pays his taxes.

8

4522168.2

defendants. Instead, Mr. Tinoco spoke only in very general terms about services he provided to his clients and certain aspects of Costa Rican corporate and banking law. In addition, as defendant LEONARD correctly states in his motion, the government's interview with Mr. Tinoco focused on co-conspirator Michael Putnam. This is because at the time of the interview, the government had received and presented to Mr. Tinoco a signed waiver of attorney-client privilege from co-conspirator Putnam.

Even if Mr. Tinoco could have discussed defendant LEONARD's or his co-defendant's Genesis Fund income, Mr. Tinoco would have been able to provide little to no information regarding the Genesis Fund distributions into their nominee Costa Rican bank accounts. During the February 17, 2010 interview, Mr. Tinoco stated that every month defendant TERESA R. VOGT ("VOGT") came with a list of checks that he needed to sign. Consequently, apart from helping defendant LEONARD and his co-defendants create Costa Rican nominee entities and related bank accounts, Mr. Tinoco's role consisted of primarily signing the checks put in front of him.

Defendant LEONARD also claims that the government failed to follow up with Mr. Tinoco regarding the tax consequences in the United States from the actions taken by Mr. Tinoco on behalf of defendant LEONARD and the other defendants. However, Mr. Tinoco stated in the interview that he always advised clients to check with their advisors in the United States and he explained that he only dealt with Costa Rican affairs. Consequently, any questioning regarding U.S. tax consequences resulting from

4522168.2

Genesis Fund distributions to nominee accounts held by defendant LEONARD and the other defendants would have been fruitless.

Defendant LEONARD also claims that "because Mr. Tinoco completely controlled whatever income items were attributable to Mr. Leonard, Mr. Leonard, unlike the typical taxpayer, was completely dependent on Mr. Tinoco in assessing whether he had legitimate defenses to some or all of the income items attributed to Mr. Leonard by Revenue Agent Pugh." Def's Mot. at 7. Incredulously, defendant LEONARD wants the Court to believe that he himself did not know the source of the deposits into his own admitted nominee account (created for the purpose of receiving unreported Genesis Fund income), and that the only person who could explain these deposits or offer defenses to the government's assertion that they were indeed unreported Genesis Fund income was Mr. Tinoco. It would be contrary to reason to conclude that defendant LEONARD himself did not know the nature of the deposits into his own nominee accounts. Moreover, Mr. Tinoco's statements during the interview, in which he stated that essentially defendant VOGT came to him with checks to sign, shows that Mr. Tinoco was not familiar with the details of the deposits into defendant LEONARD's accounts. Consequently, this claim by defendant LEONARD that he was completely dependent on Mr. Tinoco to prepare his defense to the restitution calculations is not credible and should be rejected by the Court.

Lastly, defendant LEONARD's assertion that the government's failure to produce Mr. Tinoco for the restitution hearing, or interview Mr. Tinoco regarding defendant LEONARD's restitution

issues somehow "deprived Mr. Leonard of the opportunity to meaningfully defend against the government's restitution calculations" is preposterous.  Defendant LEONARD cites no authority, nor could he, for the proposition that it is the government's responsibility to call witnesses or gather evidence in order to permit a defendant to present his own version of events.  Defendant LEONARD was given extensive opportunity to prepare and present a defense against the government's restitution calculations.  Defendant LEONARD, if he wanted, could have moved for depositions of Mr. Tinoco pursuant to Federal Rule of Criminal Procedure 15.  He chose not to do so.  In addition, defendant LEONARD presumably chose not to subpoena defendant VOGT to testify regarding the Genesis Fund deposits attributed to him as income because, in her proffer, defendant VOGT stated that defendant LEONARD received even more money than the government attributed to him.

While defendant LEONARD argues that Mr. Tinoco would have been able to help him prepare a defense to the government's restitution calculations, in fact, Mr. Tinoco's interview provides further support for the government's restitution calculations.  Mr. Tinoco stated that the person with the most knowledge regarding the Genesis Fund was defendant VOGT.  He also stated that defendant VOGT prepared the monthly statements and mailed them to the Genesis Fund investors.  These statements by Mr. Tinoco demonstrate that defendant VOGT was the most qualified individual to describe the income received by defendant LEONARD and the other defendants from the Genesis Fund.  The government

4522168.2

spoke with defendant VOGT regarding the unreported Genesis Fund income received by defendant LEONARD and others. Statements made by her and evidence she provided to the government support the government's calculations of unreported Genesis Fund income.

As noted above, in using the bank deposits method, the government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant. Because defendant LEONARD and others used numerous off-shore nominee entities, the government is understandably hampered in its efforts to reconstruct with absolute certainty the amount of unreported Genesis Fund income received by the defendants in this case. Defendant LEONARD would have the Court disregard his guilty plea, ignore the factual basis in his plea agreement, and require the government to prove beyond any doubt the source of the deposits to his nominee bank account opened for the express purpose of evading income taxes. Absolute certainty, however, is not the standard the government is required to meet and the courts have stated that "the adequacy of a bank deposits investigation necessarily turns on its own circumstances." Stone, 770 F.2d at 845 (citation omitted). Here, the government relied on bank records for accounts defendant LEONARD admitted he created for the purpose of receiving Genesis Fund distributions, along with corroboration from defendant VOGT, the primary Genesis Fund administrator. The Court has already found that, under the circumstances of this case, the government has met its burden to prove that it has done the best it can to discover, and exclude, all non-income items

from the reconstructed income. Nothing in defendant LEONARD's instant motion undermines that finding.

### IV. CONCLUSION

For all the foregoing reasons, defendant LEONARD's motion for reconsideration should be denied.

Date: May 12, 2010            Respectfully Submitted,

JOHN A. DiCICCO
Acting Assistant Attorney General

s/ Lori A. Hendrickson
LORI A. HENDRICKSON
ELLEN M. QUATTRUCCI
DANNY N. ROETZEL
Trial Attorneys
Tax Division

Attorneys for Plaintiff
United States of America

13

4522168.2